Fee Paid

202

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

BRANDEN TRAPP,
　　　　　*Plaintiff,*

v.

Case: 4:25-cv-13777
Assigned To : Kumar, Shalina D.
Referral Judge: Altman, Kimberly G.
Assign. Date : 11/25/2025
Description: CMP TRAPP V.
CREDIT ACCEPTANCE CORPORATION (CS)

CREDIT ACCEPTANCE CORPORATION,
　　　　　*Defendant.*

## PLAINTIFF BRANDEN TRAPP'S MOTION TO VACATE ARBITRATION AWARD

Plaintiff Branden Trapp ("Plaintiff"), appearing *pro se,* respectfully moves this Honorable Court to vacate the arbitration award issued on November 13, 2025, in the matter of *Branden Trapp v. Credit Acceptance,* AAA Case No. 01-25-0001-3821. This motion is brought pursuant to Section 10 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 10.

## INTRODUCTION

This case presents a textbook example of an arbitration award that must be vacated because the arbitrator acted in manifest disregard of the law and so imperfectly executed her powers that a mutual, final, and definite award was not made. The arbitrator made an explicit finding that Defendant Credit Acceptance Corporation ("CAC") violated the Fair Credit Reporting Act ("FCRA"), but then inexplicably ignored Plaintiff's unrebutted evidence of substantial actual damages, awarding a nominal and unsupported sum. The result is an award that is not only legally erroneous but is so internally inconsistent and fundamentally unfair that it cannot stand.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) as the underlying claims arise under the FCRA and the Equal Credit Opportunity Act, and pursuant to 9 U.S.C. § 10, which grants federal courts the authority to vacate arbitration awards. Venue is proper in this district as the arbitration was held, and the award was made within this judicial district.

## FACTUAL BACKGROUND

1

1. Plaintiff brought claims against CAC in an arbitration proceeding before the American Arbitration Association ("AAA") for violations of the FCRA, the Equal Credit Opportunity Act ("ECOA"), and the Michigan Consumer Protection Act.

2. Plaintiff presented substantial evidence of his claims, including evidence that CAC furnished incomplete and inaccurate information to credit reporting agencies.

3. Plaintiff also presented unrebutted evidence of his **actual damages**, including a denial of a housing application and medical records from his doctor and therapist documenting emotional distress, depression, and anxiety directly resulting from CAC's actions.

4. On November 13, 2025, Arbitrator Sheri B. Cataldo issued a Final Award. In the Award, the Arbitrator found that CAC had, in fact, violated the FCRA, stating "Claimant has demonstrated that certain payment information was incompletely reported and/or not corrected."

5. Despite this finding of liability, the Arbitrator summarily concluded, "the evidence does not reflect that Claimant was significantly harmed," and awarded Plaintiff only $500.00.

6. The Arbitrator then awarded CAC its full counterclaim of $17,487.61 for breach of contract, setting off the $500.00 for a final award against Plaintiff in the amount of $16,987.61.

7. The Arbitrator provided no analysis for her dismissal of the ECOA and Michigan Consumer Protection Act claims, nor did she address Plaintiff's legal arguments regarding the first-breach rule or the doctrine of unclean hands.

## **LEGAL STANDARD**

Judicial review of an arbitration award is statutorily limited and exceptionally narrow. However, vacatur is appropriate under 9 U.S.C. § 10(a)(4) "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

Furthermore, the U.S. Court of Appeals for the Sixth Circuit has consistently held that an arbitration award may be vacated when it is in "manifest disregard of the law." *Grain v. Trinity Health,* 551 F.3d 374, 380 (6th Cir. 2008). To prove manifest disregard, a party must show that "(1) the applicable legal principle is clear and obvious; and (2) the arbitrator consciously chose not to apply it."

2

## ARGUMENT

### I. THE AWARD MUST BE VACATED FOR MANIFEST DISREGARD OF THE LAW.

The Arbitrator's decision to ignore Plaintiff's proven actual damage after finding a violation of the FCRA constitutes a manifest disregard of the law. The FCRA clearly provides for the recovery of actual damage. 15 U.S.C. § 1681o(a)(1) and 15 U.S.C § 1681n(a)(1)(A). Plaintiff provided concrete, unrebutted evidence of such damage. The Arbitrator's conclusion that Plaintiff was not "significantly harmed" is not a finding of fact; it is a conscious decision to ignore the evidence and the law. This is not a mere error in calculation; it is a wholesale refusal to apply the clear damages provision of the statute, which satisfies the high standard for manifest disregard.

Moreover, the Arbitrator ignored multiple mandatory FCRA damage provisions: (1) punitive damages of $100-$1,000 per violation under 15 U.S.C § 1681n(a)(2); and (3) attorney fees and costs under 1681n(a)(3) and 1681o(a)(2). This wholesale disregard of clear statutory requirement constitutes manifest disregard of federal law.

### II. THE AWARD MUST BE VACATED BECAUSE THE ARBITRATOR IMPERFECTLY EXECUTED HER POWERS.

Under 9 U.S.C. § 10(a)(4), an award must be vacated if it is not "mutual, final, and definite." The Award here is fatally indefinite because it is internally contradictory. It is not possible for an award to be "definite" when it simultaneously finds that CAC is a lawbreaker that violated the FCRA and harmed Plaintiff, and also a victim entitled to its full contractual damages. This logical inconsistency renders the award legally invalid.

Furthermore, the Arbitrator "imperfectly executed" her powers by failing to provide any reasoning for her dismissal of Plaintiff's ECOA and Michigan Consumer Protection Act claims. An arbitrator cannot simply ignore claims submitted for resolution. This failure to render a decision on all submitted matters means a "final, and definite award upon the subject matter submitted was not made."

## CONCLUSION

For the foregoing reasons, Plaintiff Branden Trapp respectfully requests that this Court enter an Order:

1. VACATING the arbitration award dated November 13, 2025, in its entirety;
2. AWARDING Plaintiff his cost and reasonable attorney fees incurred in binging this Motion pursuant to 15 U.S.C. 1681n(a)(3) and 1681o(a)(2); and
3. GRANTING such other and further relief as the Court deems just and proper.

3

**EXHIBITS ARE ATTACHED AS FOLLOW:**

Exhibit A: Final Arbitration Award

Exhibit B: Arbitration Agreement

Exhibit C: Plaintiff's written evidentiary submission with affidavit and exhibits, this includes evidence the arbitrator ignored (contained in Plaintiff submission)

Exhibit D: CAC's brief with their declaration

Exhibit E: Plaintiff's reply brief.

Respectfully submitted,

/s/Branden Trapp
Branden Trapp
1687 Channing St.
Ferndale, MI 48220
(586)353-8258
Branden.trapp@gmail.com

**CERTIFICATE OF SERVICE**

I hereby certify that on 25th day of November 2025, I served a copy of the foregoing Motion to Vacate Arbitration Award and Exhibits A-E upon Defendant's counsel via email to:

Stephen W. King, Esq. King & Associates, PLLC

sking@swkinglaw.com

Date: November 25th, 2025                    /s/Branden Trapp

4

# EXHIBIT A

Final Arbitration Award

**AMERICAN ARBITRATION ASSOCIATION**
**Consumer Arbitration**

In the Matter of the Arbitration between

Case Number: 01-25-0001-3821

Branden Trapp (Claimant)
-vs-
Credit Acceptance Corporation (Respondent)

## FINAL AWARD

I, Sheri B Cataldo, the undersigned arbitrator, having been designated in accordance with the arbitration agreement entered into by the above-named parties and having been duly sworn, and oral hearings having been waived in accordance with the Rules, and having reviewed and considered the written documents submitted to me by the parties, Claimant, self-represented, and Respondent, represented by counsel, do hereby issue this FINAL AWARD as follows:

Claimant applied for financing in November 2023 to purchase a vehicle from National Auto Sales Inc. Respondent was ultimately assigned the retail installment contract from the dealership for servicing and collecting the debt. Claimant does not dispute that he failed to timely make all payments as they came due, but rather alleges that Respondent failed to furnish accurate information to certain credit reporting agencies (CRAs) concerning payments made. Claimant also alleges that Respondent failed to properly investigate, and correct incomplete or inaccurate information reported by the CRAs. Respondent asserts a counterclaim for the accelerated balance due of $17,487.61.

Claimant has demonstrated that certain payment information was incompletely reported and/or not corrected. However, the evidence does not reflect that Claimant was significantly harmed by any negligence on the part of Respondent given missed and insufficient payments both before and after the alleged inaccurate reporting and the continuing nonpayment of the debt.

Claimant is liable to Respondent in the amount of $17,487.61 for breach of contract. This amount shall be set off by $500.00 awarded to Claimant on his Fair Credit Reporting Act (FCRA) claim. No liability is found with respect to any other claims. Thus, Claimant shall pay to Respondent the sum of $16,987.61.

The above sum is to be paid on or before 30 days from the date of this Final Award.

The administrative fees of the American Arbitration Association totaling $2,000.00 shall be borne as incurred, and the compensation of the arbitrator totaling $7,350.00 shall be borne as incurred.

This Final Award is in full settlement of all claims submitted to this arbitration. All claims not expressly granted herein are hereby denied.

Date: November 13, 2025          */s/Sheri B. Cataldo*_____
                                 Arbitrator Sheri B. Cataldo

# EXHIBIT B

Arbitration Agreement

Copy of Electronic Original

Not required to mail or fax this copy to Credit Acceptance

## ADDITIONAL TERMS AND CONDITIONS

**Security Interest.** You give Us a security interest in: 1). The Vehicle and all parts or goods installed in it; 2). All money or goods received (proceeds) for the Vehicle; 3). All insurance, maintenance, service or other contracts We finance for You, and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle

**Late Charge.** You promise to make all payments when due. If You fail to make a payment when it is due. You agree to pay Us a late charge as stated on page 1 of this Contract. You agree that We do not waive any of our rights by accepting one or more late payments from You.

**Ownership and Risk of Loss.** You promise to pay Us all You owe under this Contract even if the Vehicle is damaged, destroyed or missing.

**Your Other Promises to Us.** You promise that:
- You will not remove the Vehicle from the United States or Canada.
- You will not sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission.
- You will not expose the Vehicle to misuse or confiscation.
- You will not permit any other lien or security interest to be placed on the Vehicle.
- You will preserve and protect the Vehicle and keep it in good condition and repair.
- You will not use the Vehicle unlawfully or abandon it. If a governmental agency impounds the Vehicle, You will notify Us immediately and regain possession of the Vehicle. We may regain possession of the Vehicle and treat it as a default.
- You will pay all taxes, assessments, rentals, charges, and other fees imposed on the Vehicle when they are due. If We pay any repair bills, storage bills, taxes, fines, fees, or other charges on the Vehicle, You agree to repay the amount to Us
- You will permit Us to inspect the Vehicle at any reasonable time.
- You will promptly sign, or cause others to sign, and give Us any documents We reasonably request to perfect our security interest.
- You have not made and will not make an untrue, misleading or incomplete statement in a credit application, this Contract or any information provided in connection with this Contract.
- You will promptly provide Us with any additional personal or financial information concerning You or any information about the Vehicle that We may reasonably request from time to time.
- You will immediately notify Us if You change Your name or address.

**Finance Charge.** This is a simple interest contract. Finance charges are earned on a daily basis by applying the Contract Rate to the unpaid balance of the Amount Financed for the time the balance is owed. We will apply payments to late charges, finance charges, and to the unpaid balance of the Amount Financed and other charges in any manner we choose unless we are required by law to apply payments in a particular order. After assignment, the Seller may receive a portion of the finance charges.

**Prepayment.** You have the right to prepay Your account balance at any time without a penalty.
If You prepay only a portion of the balance remaining under this Contract, We will apply the prepayment to Your account balance. Your payment due date will advance by one month each time a standard monthly payment is satisfied in full by a prepayment. You must still make all payments on time until Your obligation under this Contract is paid in full. If You make a partial prepayment Your last payment or payments may be less than the scheduled amount due.

**Late or Early Payments.** The Finance Charge, Total of Payments, and Total Sale Price shown on the front of this Contract are based on the assumption that You will make every payment on the date it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if You pay later and less if You pay early. Charges may take the form of a larger or smaller final payment, at Our option, more or fewer payments of the same amount as Your scheduled payment with a smaller final payment.

**Required Physical Damage Insurance.** You must insure Yourself and Us for the life of this Contract against loss of, or physical damage to, the Vehicle with a policy in Your name that is acceptable to Us. We have the right to approve the type and amount of insurance.

If the Vehicle is lost or damaged, You agree that We can use any insurance settlement either to repair the Vehicle or apply to Your account balance. If applied to Your account balance, the insurance settlement proceeds that do not pay Your obligation in full under this Contract will be applied as a partial payment.

**Optional Maintenance or Service Contracts.** This Contract may contain charges for optional maintenance, service or warranty contracts. If the Vehicle is repossessed, You agree that We may claim benefits under these contracts and terminate them to obtain refunds of unearned charges.

**Insurance, Maintenance, Service or Other Contract Charges Returned to Us.** If any charge for required insurance is returned to Us, it may be credited to Your account in accordance with the Prepayment section of this Contract. Any refund on optional maintenance, service, warranty or other contracts obtained by Us will be credited to Your account in accordance with the Prepayment section of this Contract.

**Default and Acceleration of the Contract.** You will be in default if:
- You fail to pay any amount due under this Contract when it is due.
- You break any of Your other promises You made in this Contract.
- A proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property.

If You are in default of this Contract, We may declare the entire unpaid balance of this Contract due and payable immediately at any time without notice to You, unless We are required by law to provide You with such notice, and subject to any right You may have to reinstate the Contract. The amount You will owe will be the unpaid part of the Amount Financed plus the earned and unpaid portion of the Finance Charge, any late charges, and any amounts due because of Your default.

**Repossession of the Vehicle.** If You default, We may take (repossess) the Vehicle. To repossess the Vehicle, We can enter Your property, or the property where the Vehicle is stored, so long as it is done peacefully and the law allows it. Any accessories, equipment or replacements will remain with the Vehicle. You hereby acknowledge and agree that any personal property contained within the Vehicle may be removed and held without liability to Us or our agent. It is Your responsibility to promptly and immediately contact Us to make arrangements for the return of Your personal property. You are responsible for paying all reasonable charges associated with the repossession.

**Getting the Vehicle Back After Repossession.** If We repossess the Vehicle, You have the right to pay to get it back (redeem) at any time before We sell, lease, license or otherwise dispose of any or all of the Vehicle in its present condition or following any commercially reasonable preparation or processing.

MICHIGAN CREDIT ACCEPTANCE CORPORATION (02-2023)
© 2012-2023 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 3 of 5

The original retail installment contract is assigned to Credit Acceptance Corporation.
This copy was created on 11/10/2023

⇨ Buyer's Initials

Buyer's Initials

[27]

# EXHIBIT C

Plaintiff's written evidentiary submission
with an affidavit and exhibits, including
evidence the arbitrator ignored (contained in Plaintiff submission)

# CLAIMANT'S WRITTEN EVIDENTIARY SUBMISSION

**AMERICAN ARBITRATION ASSOCIATION**

**CONSUMER ARBITRATION RULES**

**CASE NO:** 01-25-0001-3821

**BRANDEN TRAPP,** Claimant,

v.

**CREDIT ACCEPTANCE CORPORATION,** Respondent.

**ARBITRATOR:** Honorable Sheri B. Cataldo

**Submitted by:** Branden Trapp, Pro Se

**Date:** October 6, 2025

## I. INTRODUCTION

This arbitration presents a case of extraordinary corporate malfeasance by Credit Acceptance Corporation ("CAC"), a sophisticated financial entity that has systematically violated both the Fair Credit Reporting Act ("FCRA") and their own internal corporate policies through a deliberate pattern of furnishing false information and conducting sham investigations. The evidence presented herein establishes not merely FCRA violations, but systematic corporate bad faith conduct where CAC created specific procedures for investigating payment disputes, established minimum investigation standards, and required escalation of CFPB complaints—then systematically violated every one of these corporate policies while maintaining false reporting.

For over thirty-two months, CAC has engaged in willful noncompliance with federal law and their own corporate standards, causing severe financial and emotional harm to Claimant Branden Trapp. The evidence includes CAC's own internal records constituting "smoking gun" proof of their violations, their own 70-page production documents proving corporate knowledge and systematic policy violations, and unprecedented third-party validation from two major credit bureaus that have independently concluded CAC's reporting was so systematically problematic that complete deletion was the only remedy.

This is not a case of isolated error or good-faith mistakes. The evidence establishes four independent but reinforcing patterns of willful conduct: first, CAC's systematic violation of their own corporate policies requiring minimum investigation standards; second, CAC's systematic furnishing of demonstrably false payment information despite possessing accurate records in their own ledger; third, CAC's deployment of a sham investigation

process designed to frustrate consumers rather than ascertain truth; and fourth, the extraordinary validation by both Equifax and Experian, who have completely removed CAC's tradeline from Claimant's credit files—an unprecedented acknowledgment of systematic FCRA violations.

# II. THE SMOKING GUN EVIDENCE: CAC'S SYSTEMATIC VIOLATION OF THEIR OWN CORPORATE POLICIES

## A. CAC's Own Internal Procedures Prove Corporate Knowledge and Willful Violations

The most devastating evidence against CAC comes from their own 70-page production documents (Exhibit HH, pages 1-3), which contain explicit admissions that transform this case from external FCRA violations to systematic corporate policy violations. These documents, created April 3, 2025, and reviewed June 1, 2025, establish CAC's corporate knowledge of proper investigation procedures and their willful decision to violate their own minimum standards.

**CAC's Own Policy Statement (Exhibit HH, page 1):**
"Team members may need to investigate more than the minimum for each dispute code or type based upon the facts and circumstances in the dispute and account, but they may not investigate less."

This policy statement is devastating because it proves CAC established minimum investigation standards, then systematically violated those standards by deploying automated responses and frivolous determinations that investigated "less" than their own minimum requirements.

## B. Specific Corporate Procedures for Payment Amount Disputes

CAC's internal job aid (Exhibit HH, page 1) lists "Actual Payment or Scheduled Payment Amount" as the first direct dispute type, proving corporate awareness that payment disputes are common and require specific handling. This directly contradicts CAC's subsequent "frivolous" determination regarding Claimant's payment disputes.

**Required Investigation for Payment Disputes (Exhibit HH, page 3):**
- Review Payment History to determine if payments have been made and the amounts
- Review Account Notes to determine if a misapplied payment occurred on account
- Review Tasks to determine if there is a Chapter 13 bankruptcy or protected service member status

CAC possessed these specific procedures but systematically ignored them, choosing instead to deploy automated "frivolous" determinations that violated their own corporate

P.2

minimum standards.

## C. Universal Investigation Requirements Systematically Violated

CAC's own procedures (Exhibit HH, page 2) require all team members to:
 • Review and verify consumer and account information contained in the dispute against the information in the Company's systems
 • Review prior disputes to better assess why the customer continues to dispute
 • Review account notes to assess what has transpired on the account

CAC violated every single one of these requirements despite having specific corporate procedures mandating compliance. This systematic violation of internal policies proves willful disregard of both FCRA requirements and corporate compliance standards.

## D. CFPB Escalation Procedures Ignored

CAC's own procedures (Exhibit HH, page 3) require CFPB complaints to be escalated to "regulatory.compliance@creditacceptance.com" with specific handling protocols. Despite Claimant's CFPB complaint (Exhibits I, pages 1-4) and dissatisfaction feedback (Exhibits R, page 1), CAC systematically ignored their own escalation requirements, demonstrating corporate-level regulatory non-compliance.

# III. SYSTEMATIC PAYMENT REPORTING INACCURACIES: THE CORE FCRA VIOLATIONS

## A. The Irrefutable Evidence of Willful Inaccuracy

The evidence establishes a clear pattern of CAC reporting false payment information despite having accurate data in their own systems and specific corporate procedures requiring payment history review. CAC's internal ledger (Exhibit P, page 3) shows the actual payments received, while credit bureau reports demonstrate systematic false reporting:

| Month | CAC Ledger | Equifax | TransUnion | Experian |
|---|---|---|---|---|
| Mar 2024 | $742.40 | $0 | $0 | $742.40 |
| Jul 2024 | $750.00 | $0 | $0 | Shown as Aug |
| Aug 2024 | $507.40 | $0 | $0 | $750 (Jul pmt) |

## B. CAC's Knowledge of Accurate Information

*P.3*

Bank statements provide independent verification of payments made to CAC, creating an unbreakable chain of evidence:

**Chase Bank Statements (Exhibits AA, pages 1-4):**
- March 25, 2024: $742.40 payment to Credit Acceptance
- July 18, 2024: $750.00 payment to Credit Acceptance

**Chime Bank Screenshots (Exhibits AA, pages 5-6):**
- August 23, 2024: $417.40 payment to Credit Acceptance
- August 25, 2024: $90.00 payment to Credit Acceptance

CAC's own ledger (Exhibit P, page 3) confirms receipt of these exact amounts, proving CAC had accurate payment information but chose to report false data to credit bureaus in direct violation of their own corporate procedures requiring payment history review.

## C. NCLC Authority on Accuracy Standards

The National Consumer Law Center treatise establishes the enhanced accuracy standard under FACTA: **"The FCRA previously prohibited a furnisher from furnishing information that the furnisher 'knows or consciously avoids knowing is inaccurate.' This standard was changed by the FACTA of 2003 to prohibit a furnisher from furnishing information that the furnisher 'knows or has reasonable cause to believe' is inaccurate. The term 'reasonable cause to believe' is defined as 'having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.'"** National Consumer Law Center, Fair Credit Reporting § 3.4.2 (9th ed. 2017).

CAC's own ledger constitutes "specific knowledge" that would cause any reasonable person to have substantial doubts about the accuracy of their credit reporting, making their continued false reporting a clear violation of the enhanced FACTA accuracy standard.

# IV. SYSTEMATIC INVESTIGATION FAILURES: VIOLATION OF CAC'S OWN MINIMUM STANDARDS

## A. Pattern of Automated Responses Violating Corporate Policy

Claimant submitted 10 legitimate disputes through the ACDV system within 32 months: 1 dispute with Equifax regarding the account in this case (Exhibits FF, pages 1-4), 2 disputes with Experian regarding the account in this case (Exhibits GG, pages 1-9), and 7 regarding an old CAC account not relevant to this case.

CAC's responses demonstrate systematic violation of their own "may not investigate less" policy (Exhibit HH, page 1):

P.4

**CAC's Required Actions vs. Actual Conduct:**
 • Required: Review payment history to determine amounts → Actual: Automated "frivolous" determination
 • Required: Review account notes for payment arrangements → Actual: Ignored documented payment history
 • Required: Verify information against company systems → Actual: Continued false reporting despite accurate ledger
 • Required: Escalate CFPB complaints → Actual: Ignored escalation procedures

## B. Failure to Mark Account as Disputed

Despite CAC's own procedures requiring proper account status management, CAC systematically failed to mark the account in this case as disputed during the investigation period, violating 15 U.S.C. § 1681s-2(b)(1)(A).

## C. NCLC Authority on Reasonable Investigation Standards

The National Consumer Law Center treatise establishes the definitive reasonable investigation standard: **"The 4th Circuit upheld the requirement that the investigation must be reasonable: 'We therefore hold that § 1681s-2(b)(1) requires creditors, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified.'"** National Consumer Law Center, Fair Credit Reporting § 3.11.1 (9th ed. 2017), citing *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2003).

CAC's automated responses and violation of their own investigation procedures prove their investigations were objectively unreasonable under this established standard.

## D. NCLC Authority on Automated Processing Violations

The NCLC treatise reveals the systematic nature of automated processing violations: **"Testimony in cases suggests that credit reporting agencies receive tens of thousands of consumer disputes each week (one agency reportedly receives between 35,000 and 50,000 per week). Approximately 80 percent of such complaints are written. Some agencies reportedly have procedures that require quotas for the number of consumer disputes employees must process. One former credit reporting agency employee testified that employees were required to process one dispute every four minutes in order to meet quotas. Each agency has a different process for handling disputed information, but all three collaborated through CDIA to create an automated on-line reinvestigation processing system: 'E-OSCAR,' touted by the credit reporting industry as a state-of-the-art solution for processing ACDVs and AUDs. However, it appears that use of this automated system has resulted in a verification, not reinvestigation process, in which written disputes from consumers, often containing a detailed letter**

P.5

and other documentation are translated into a two digit code that the credit reporting agency employee believes best describes the dispute. The code is sent to the furnisher for verification. A more thorough reinvestigation in which documents are reviewed appears to be the exception rather than the rule." National Consumer Law Center, Fair Credit Reporting § 3.9 (9th ed. 2017).

This authority proves that CAC's automated processing through E-OSCAR codes, combined with their violation of their own investigation procedures, constitutes systematic FCRA violations.

## E. NCLC Authority on Generic Response Violations

The NCLC treatise establishes that generic responses violate FCRA requirements: **"Credit reporting agencies routinely respond to requests for reinvestigations by stating that they have received the request from the consumer and that they will contact the furnisher or source of the disputed information and send results of the reinvestigation to the consumer. Once the disputed information is purportedly reinvestigated the credit reporting agencies then send generic and uninformative letters stating that an investigation has been made, without including any details as to whom they have contacted and what information was obtained or relied upon for a final determination. This information is not unimportant, however, because it reflects the fact that the credit reporting agency received the dispute, that the dispute was in fact forwarded to the furnisher, and that a decision was made with respect to the accuracy or completeness of the disputed information."** National Consumer Law Center, Fair Credit Reporting § 3.9 (9th ed. 2017).

CAC's generic responses demonstrate systematic violation of investigation requirements by providing no details about their investigation process or findings.

# V. THIRD-PARTY VALIDATION OF SYSTEMATIC VIOLATIONS

## A. Unprecedented Dual-Bureau Deletion

The most powerful evidence of CAC's systematic violations comes from independent third-party validation:

**Equifax Complete Deletion:** Following Claimant's dispute (Exhibits A, pages 1-5), the November 2, 2024 Equifax report (Exhibits X, pages 1-6) showed no indication that CAC conducted any investigation whatsoever in response to Equifax's investigation request. The account remained reporting the same inaccurate information with no changes. Subsequently, following Claimant's notice of intent to sue for investigation failures, Equifax completely suppressed CAC's tradeline (Exhibits DD, page 1), indicating Equifax determined CAC's reporting was so problematic that complete removal was necessary.

P.6

**Experian Complete Deletion:** Following Claimant's dispute (Exhibits B, pages 1-6), after Claimant pursued federal court and provided discovery and proof of CAC inaccurate reporting, Experian independently deleted CAC's tradeline. Exhibit BB pages 1-9 will show Claimant's most recent Experian report with CAC tradeline removed, providing second independent validation that CAC's systematic reporting violations were so severe that major credit bureaus concluded the information could not be accurately maintained.

## B. TransUnion Ongoing Inaccuracies

TransUnion's most recent report (Exhibits CC, pages 1-7) continues to show the same payment reporting errors, demonstrating ongoing harm since Claimant has not yet disputed with TransUnion. This proves the systematic nature of CAC's false reporting across all three major credit bureaus.

# VI. CAC'S FRIVOLOUS DETERMINATION VIOLATIONS

## A. NCLC Authority on Frivolous Determination Standards

The National Consumer Law Center treatise establishes strict requirements for frivolous determinations: **"However, if the furnisher considers the dispute frivolous, the furnisher must notify the consumer within five business days of this determination, the reason it considers the dispute frivolous, and what information the consumer must provide to convert the dispute into one that will trigger a reinvestigation. The furnisher must investigate the dispute and report the results back to the consumer in the same time frame allowed credit reporting agencies for reinvestigation. If the furnisher finds the information to be inaccurate, the furnisher must correct the information with each agency to which the furnisher furnished the information."** National Consumer Law Center, Fair Credit Reporting § 3.4.4a (9th ed. 2017).

CAC violated every aspect of this standard by providing no specific reasons, no five-day correction period, and no proper investigation despite having specific corporate procedures for payment disputes.

## B. Bad Faith Frivolous Determination

CAC's "frivolous" determination was made in bad faith, given that they possessed specific corporate procedures for payment amount disputes but chose to ignore them while having accurate payment information in their own ledger.

# VII. CONCRETE HARM AND DAMAGES

P.7

## A. Credit Score Devastation and Third-Party Denials

The false reporting caused immediate and severe credit damage:
 • Initial Equifax Score: 538 (Exhibits A, page 4)
 • Credit Score Impact: Documented decline due to CAC's false reporting
 • American Express Denial: Platinum Card application denied November 30, 2024, specifically citing FICO score of 550 and "serious delinquency" (Exhibits L, page 1)

## B. Housing Denials and Economic Harm

CAC's false reporting caused immediate housing complications and denials:
 • Pre-Adverse Notice: October 11, 2024, required car note to be paid/current due to CAC reporting (Exhibits C, page 1)
 • Property Denial: November 11, 2024, denied housing due to CAC tradeline reporting (Exhibits G, page 1)

## C. Medical Harm and Workplace Disruption

The systematic violations caused documented medical harm:
 • Dr. Natheer Treatment: Medical diagnosis and work leave for stress and anxiety (Exhibits EE, pages 1-4)
 • Therapist Documentation: Wayne State University Tolan Park therapist Tori-Ann S. Bright documented stress, anxiety and depression due to homelessness and credit report inaccuracies (Exhibits H, page 1)
 • CFPB Complaint Filed: Formal complaint documenting systematic violations (Exhibits I, pages 1-4)
 • Over-the-Counter Medication: CVS pharmacist recommendation for stress management (Exhibits T, page 4)
 • Workplace Harassment: Julia Clark's repeated phone calls during work hours caused "undue stress and anxiety" and disrupted Claimant's job (Exhibits U, page 1)

# VIII. LEGAL ANALYSIS: WILLFUL FCRA VIOLATIONS ENHANCED BY CORPORATE POLICY VIOLATIONS

## A. The Safeco Standard for Willfulness Enhanced by Corporate Knowledge

Under *Safeco Insurance Co. v. Burr*, 551 U.S. 47 (2007), willful FCRA violations occur when a defendant acts with "reckless disregard" of statutory requirements. CAC's conduct exceeds this standard through systematic violation of both FCRA requirements and their own corporate policies.

*P.B*

**Evidence of Enhanced Willfulness:**

1. Corporate Knowledge: CAC's own procedures (Exhibit HH) prove knowledge of proper investigation requirements
2. Systematic Policy Violations: Pattern of violating "may not investigate less" corporate standard
3. Automated Processing: Identical responses across multiple disputes violating corporate procedures
4. Ongoing Conduct: Continued false reporting despite accurate internal records and corporate procedures

## B. Corporate Policy Violations Establish Objective Unreasonableness

*Johnson v. MBNA America Bank*, 357 F.3d 426 (4th Cir. 2004), establishes that furnishers must conduct reasonable investigations. CAC's own documents prove they had specific procedures for reasonable investigations but chose to violate their own minimum standards, establishing willfulness beyond the Safeco threshold.

*Chiang v. Verizon New England Inc.*, 595 F.3d 26 (1st Cir. 2010), establishes objective reasonableness standards. CAC's violation of their own corporate procedures proves objective unreasonableness.

## C. Systematic Pattern Supporting Enhanced Damages

*Gorman v. Wolpoff & Abramson*, 584 F.3d 1147 (9th Cir. 2009), supports enhanced damages for systematic violations. CAC's pattern of violating their own corporate policies while maintaining false reporting demonstrates the systematic bad faith conduct warranting maximum statutory damages.

*Stevenson v. TRW Inc.*, 987 F.2d 288 (5th Cir. 1993), supports enhanced damages for willful violations. CAC's systematic corporate policy violations establish willfulness warranting maximum penalties.

*Cushman v. Trans Union Corp.*, 115 F.3d 220 (3rd Cir. 1997), requires good faith investigations. CAC's "frivolous" determination while violating their own investigation procedures demonstrates bad faith conduct.

## D. Additional Supporting Case Law

*Westra v. Credit Control of Pinellas*, 409 F.3d 825 (7th Cir. 2005), establishes that furnishers cannot rely on automated systems when they have reason to doubt accuracy. CAC's own ledger provided clear reason to doubt their reporting accuracy.

*P.9*

*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010), requires meaningful investigation beyond automated processing. CAC's violation of their own investigation procedures proves their investigations were not meaningful.

*Purcell v. Bank of Am.*, 659 F.3d 622 (7th Cir. 2011), establishes that furnishers must investigate disputes in good faith. CAC's systematic violation of their own procedures while maintaining false reporting demonstrates bad faith.

# IX. DETAILED FCRA VIOLATION COUNTS

## Count I: Failure to Conduct Reasonable Investigation (15 U.S.C. § 1681s-2(b)(1)(A))

CAC violated this provision by:

- Failing to conduct reasonable investigations despite having specific corporate procedures
- Using automated "frivolous" determinations instead of reviewing payment history as required by their own procedures
- Violating their own "may not investigate less" policy
- Ignoring CFPB escalation requirements

## Count II: Failure to Review Relevant Information (15 U.S.C. § 1681s-2(b)(1)(B))

CAC violated this provision by:

- Failing to review payment history despite having specific procedures requiring such review
- Failing to review account notes as mandated by their own corporate policies
- Failing to verify information against company systems despite having accurate ledger data

## Count III: Failure to Report Investigation Results (15 U.S.C. § 1681s-2(b)(1)(C))

CAC violated this provision by:

- Failing to report accurate investigation results to credit reporting agencies
- Continuing to report false payment information despite having accurate data in their systems

P.10

## Count IV: Failure to Modify or Delete Inaccurate Information (15 U.S.C. § 1681s-2(b)(1)(D))

CAC violated this provision by:

- Failing to modify or delete inaccurate payment information despite knowing it was false
- Maintaining false reporting across multiple credit bureaus for over 32 months

## Count V: Failure to Mark Account as Disputed (15 U.S.C. § 1681s-2(b)(1)(E))

CAC violated this provision by:

- Failing to mark the account as disputed during the investigation period
- Violating their own procedures for account status management

## Count VI: Furnishing Information Known to be Inaccurate (15 U.S.C. § 1681s-2(a)(1)(A))

CAC violated this provision by:

- Furnishing payment information they knew was inaccurate based on their own ledger
- Having "reasonable cause to believe" the information was inaccurate under the FACTA standard

# X. MCPA VIOLATIONS: UNFAIR AND DECEPTIVE PRACTICES

## A. Unfair Practices Under MCL 445.903(1)(a)

CAC's systematic false reporting and violation of their own corporate policies constitutes unfair practices causing substantial injury to consumers. The dual-bureau deletion by Equifax and Experian provides independent validation that CAC's practices were so unfair that major credit bureaus concluded complete removal was necessary.

## B. Causing Confusion Under MCL 445.903(1)(o)

CAC's false payment reporting created systematic confusion about Claimant's creditworthiness, directly causing credit denials and housing rejections. The confusion was willfully created through CAC's violation of their own corporate procedures requiring payment history review.

# XI. SUPPORTING CASE LAW AND NCLC AUTHORITY

p.11

The National Consumer Law Center's Fair Credit Reporting treatise establishes that generic responses violate FCRA investigation requirements. CAC's automated responses, combined with violation of their own "may not investigate less" policy, constitute systematic FCRA violations warranting maximum damages.

NCLC § 3.4.4a confirms that frivolous determinations must be made carefully with proper basis. CAC's systematic pattern of identical responses violates this standard by demonstrating automated processing rather than careful determination in direct violation of their own corporate procedures.

# XII. REQUESTED RELIEF

Based on the overwhelming evidence of systematic FCRA and MCPA violations, combined with CAC's willful violation of their own corporate policies, Claimant respectfully requests:

## A. FCRA Damages (15 U.S.C. § 1681n)

- Statutory Damages: $1,000 per violation × 6 counts = $6,000
- Punitive Damages: Enhanced damages for willful corporate policy violations
- Actual Damages: Credit score harm, housing denials, medical expenses, lost opportunities

## B. MCPA Damages (MCL 445.911)

- Actual Damages: Economic harm from false reporting
- Additional Damages: Up to $250 per violation for unfair practices

## C. Additional Relief

- Attorney Fees and Costs: As provided by statute
- Injunctive Relief: Requiring CAC to implement proper investigation procedures
- Deletion: Complete removal of false tradeline information

# XIII. CONCLUSION

The evidence presented establishes not merely FCRA violations, but systematic corporate bad faith conduct. CAC created specific procedures for investigating payment disputes, established minimum investigation standards, and required escalation of CFPB complaints —then systematically violated every one of these corporate policies while maintaining false reporting despite having accurate payment information in their own ledger.

The unprecedented dual-bureau deletion by Equifax and Experian provides independent third-party validation that CAC's systematic violations were so severe that complete

P.12

removal was the only remedy. This case represents the most egregious form of FCRA violations: willful corporate policy violations combined with systematic furnishing of false information despite actual knowledge of the truth.

Maximum statutory and punitive damages are warranted to deter this type of systematic corporate misconduct and to compensate Claimant for the severe financial and emotional harm caused by CAC's willful violations of federal and state law.

**SWORN STATEMENT**

I, Branden Trapp, declare under penalty of perjury under the laws of the State of Michigan that the foregoing is true and correct to the best of my knowledge, information, and belief.

**Signature:** _____

**Branden Trapp**

**Date:** __6__ day of October, 2025

**NOTARY ACKNOWLEDGMENT**

State of Michigan

County of Oakland

On this __6th__ day of October, 2025, before me personally appeared Branden Trapp, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Michigan that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**Signature:** _____

**Notary Public** Mikel Clark

**My commission expires:** _9-19-2029_

MIKEL CLARK
Notary Public - State of Michigan
County of Wayne
My Commission Expires Sep 19, 2029
Acting in the County of Wayne

P.13

# AFFIDAVIT OF BRANDEN TRAPP

**STATE OF MICHIGAN**

**COUNTY OF OAKLAND**

I, Branden Trapp, being first duly sworn, depose and state as follows:

# I. PERSONAL KNOWLEDGE AND STANDING

1. I am over the age of eighteen (18) years and am competent to testify to the matters set forth herein. I have personal knowledge of the facts stated in this affidavit, and if called upon to testify, I could and would testify competently thereto.

2. I am the Claimant in the above-captioned arbitration proceeding against Credit Acceptance Corporation ("CAC"). The statements contained herein are based upon my personal knowledge, review of documents, and communications with CAC and credit reporting agencies.

# II. BACKGROUND AND ACCOUNT RELATIONSHIP

1. I had a vehicle financing relationship with CAC for Account #9104 and Account #11205. Throughout this relationship, I made payments as agreed and maintained documentation of all transactions.

2. CAC systematically reported false and inaccurate payment information to credit reporting agencies despite having accurate payment records in their own systems, causing severe damage to my credit profile and financial standing.

# III. CHRONOLOGICAL ACCOUNT OF CAC'S SYSTEMATIC VIOLATIONS

## October 2024: Initial Discovery and Dispute Efforts

1. **Exhibit A (10/04/2024):** I initiated a formal dispute with Equifax via USPS Certified Mail regarding the inaccurate reporting by CAC on Account #11205. This exhibit contains the full text of my dispute, clearly outlining the payment discrepancies and requesting a thorough investigation.

2. **Exhibit B (10/06/2024):** Two days later, I sent a similar dispute to Experian, also via USPS Certified Mail, ensuring that CAC was notified of the inaccuracies through multiple credit reporting agencies.

P. 1

3. **Exhibit C (10/11/2024):** I received an email from the leasing office at Rondo Investment stating that my car note had to be paid/current before moving forward with the rental application. This email demonstrates how CAC's false reporting of delinquency directly prevented me from securing housing, as the leasing office was requiring resolution of the falsely reported delinquent account before proceeding.

4. **Exhibit D (October 2024):** This exhibit contains the documentation of my temporary payment arrangement with CAC for $450 per month, demonstrating my good faith efforts to manage the account and CAC's awareness of my payment status.

## November 2024: Escalating Harm and CAC's False Certifications

1. **Exhibit E (11/08/2024):** I received the results of my Experian dispute, in which CAC had falsely "certified" the inaccurate information as correct. This exhibit is the first instance of CAC's willful disregard for the truth.

2. **Exhibit F (11/08/2024):** My Equifax credit report, pulled on this date, shows a detailed payment history riddled with inaccuracies, including duplicate entries, incorrect payment amounts, and a failure to reflect my actual payment history.

3. **Exhibit G (11/11/2024):** I received the formal adverse action notice from Rondo, explicitly stating that the denial was due to the 120+ day delinquency reported by CAC. This provides concrete, documented evidence of the housing harm I suffered as a direct result of CAC's false reporting.

4. **Exhibit H (11/15/2024):** The stress and anxiety caused by this situation became so severe that my therapist recommended a 30-day course of anxiety medication. This exhibit includes the therapist's written recommendation and documents the beginning of the medical harm I endured.

5. **Exhibit I (11/20/2024):** I filed a formal complaint with the Consumer Financial Protection Bureau (CFPB) and simultaneously sent CAC a "Notice of Violations and Opportunity to Cure." This exhibit contains the full text of the CFPB complaint and the notice, which put CAC on formal, legal notice of their FCRA violations.

6. **Exhibit J & K (11/27/2024):** These exhibits contain the email correspondence between myself and Julia Clark at CAC. I attempted to resolve the matter, insisted on written communication to maintain a clear record, and documented my ongoing efforts to find a resolution.

7. **Exhibit L (11/30/2024):** I was denied a credit product by American Express. The denial letter explicitly cited information on my credit report, which was being negatively impacted by CAC's false reporting. This provides further third-party validation of the credit damage I was experiencing.

P.2

## December 2024: CAC's Bad Faith and Willful Non-Compliance

1. **Exhibits M, N, & O (12/04/2024):** This email chain with Julia Clark shows my persistent follow-up, her continued delays and claims of an "ongoing investigation," and my setting of a firm deadline for resolution.

2. **Exhibit P (12/05/2024):** This is CAC's official response to my CFPB complaint. Critically, the transaction history they provided, while intended to support their position, actually contains the very information that proves my claims and is itself inaccurate.

3. **Exhibits Q & R (12/05/2024):** These exhibits contain my detailed rebuttal to the CFPB, in which I dissect CAC's response, highlight their misrepresentations, and provide a point-by-point analysis of their false claims.

4. **Exhibit S (12/05/2024):** My final email to Julia Clark, offering one last opportunity to resolve the matter before I was forced to proceed with arbitration.

5. **Exhibit T (12/06/2024):** This exhibit documents a severe emotional distress incident at my workplace, triggered by a call from CAC's automated dialer. It includes a note from my pharmacist and my work time record, showing I had to leave work early to seek medication.

6. **Exhibit U (12/06/2024):** My formal, written request to Julia Clark and CAC to cease all phone contact and communicate only in writing, as the automated calls were causing significant emotional distress and disruption at my workplace.

7. **Exhibit V (12/06/2024):** Julia Clark's email response, in which CAC refuses to communicate in writing and insists on phone-only discussions. This is a clear attempt to avoid creating a written record of their conduct.

8. **Exhibit W (12/06/2024):** The USPS Priority Mail notice I sent to CAC, reiterating my dispute, demanding correction, and formally warning of impending arbitration. This provided a final, formal notice of their ongoing violations.

9. **Exhibit X (12/13/2024):** My updated Equifax report, which shows that despite all my efforts and notices, the same duplicate entries and inaccuracies remained, proving that no reasonable investigation had been conducted.

10. **Exhibit Y (12/26/2024):** The letter from CAC in which they officially deem my dispute "frivolous or irrelevant." This is a direct violation of their duty to investigate under the FCRA and is a cornerstone of my claim for willful non-compliance.

## January 2025: Final Notice and Escalation to Arbitration

1. **Exhibit Z (01/09/2025 - 02/11/2025):** This exhibit contains the final sequence of events, including my formal "Notice of Intent" to sue sent on January 9, 2025, to CAC's resident agent at 3410 Belle Chase Way, Ste 600, Lansing, MI 48911 and to their agents Julia Clark

*P.3*

and Brionna. When I received no response by January 15, 2025, I sent follow-up emails stating "Hello Compliance Department I haven't heard back from you or anyone regarding my intent to sue. Silence is acquiescence, and time is coming to an end to handle this matter outside of litigation." On January 15, 2025, I received a brief response from Brionna stating they had forwarded my email to the proper department, but this was followed by continued silence, ultimately forcing me to proceed with this arbitration demand.

## IV. SUPPORTING FINANCIAL DOCUMENTATION

1. **Exhibit AA (Chase Bank Statements and Chime Bank Screenshots):** These exhibits provide irrefutable proof of the actual payments I made to CAC: Chase Bank Statements (pages 1-4) document my March 25, 2024 payment of $742.40 and July 18, 2024 payment of $750.00 to Credit Acceptance. Chime Bank Screenshots (pages 5-6) document my August 23, 2024 payment of $417.40 and August 25, 2024 payment of $90.00 to Credit Acceptance. These bank records create an unbreakable chain of evidence proving CAC received the exact payments they claimed were never made.

## V. THIRD-PARTY VALIDATION OF CAC'S SYSTEMATIC VIOLATIONS

1. **Exhibit BB (Experian Credit Report - pages 1-9):** My most recent Experian report showing CAC tradeline completely removed. This provides independent third-party validation that Experian determined CAC's reporting was so systematically problematic that complete deletion was the only remedy. The complete removal of the tradeline by Experian, without any notation of dispute or partial correction, demonstrates that even the credit reporting agency concluded that CAC's information was so fundamentally flawed that it could not be corrected and had to be entirely deleted from my credit file.

2. **Exhibit CC (TransUnion Credit Report - pages 1-7):** TransUnion's most recent report continues to show the same payment reporting errors, demonstrating ongoing harm since I have not yet disputed with TransUnion. This proves the systematic nature of CAC's false reporting across all three major credit bureaus. The fact that TransUnion still shows the inaccurate information while Equifax has suppressed the tradeline and Experian has deleted it entirely demonstrates that CAC continues to furnish false information to at least one major credit bureau, causing ongoing damage to my credit profile and violating their continuing duty under the FCRA.

3. **Exhibit DD (Equifax Suppression Documentation - page 1):** Following my notice of intent to sue for failure to investigate/re-investigate, Equifax completely suppressed CAC's tradeline. This constitutes unprecedented third-party validation that CAC's

P.4

reporting violations were so severe that major credit bureaus concluded complete removal was necessary. The suppression by Equifax is particularly significant because their investigation results showed no updated results for CAC, proving that CAC failed to conduct any reasonable investigation despite being notified of the dispute through the credit reporting agency. The fact that Equifax later suppressed the entire tradeline demonstrates that they determined CAC's failure to investigate and update their reporting was so systematic that complete removal was the only appropriate remedy.

## VI. MEDICAL HARM DOCUMENTATION

1. **Exhibit EE (Dr. Natheer Treatment Records - pages 1-4):** Medical documentation of stress and anxiety requiring work leave directly caused by CAC's violations. This establishes the severe emotional and physical harm caused by CAC's systematic FCRA violations and provides medical evidence supporting damages claims.

## VII. DISPUTE DOCUMENTATION AND CAC'S SHAM INVESTIGATIONS

1. **Exhibit FF (Equifax ACDV Records - pages 1-4):** Complete ACDV (Automated Consumer Dispute Verification) documentation of my 1 dispute with Equifax regarding this account, showing CAC's failure to conduct any meaningful investigation despite clear evidence of payment inaccuracies and the automated nature of their response system. The ACDV records show that my detailed dispute about payment inaccuracies was reduced to a simple two-digit code and that CAC's response was equally automated, with no evidence of the thorough payment history review required by their own corporate procedures documented in Exhibit HH.

2. **Exhibit GG (Experian ACDV Records - pages 1-9):** Complete ACDV (Automated Consumer Dispute Verification) documentation of my 2 disputes with Experian regarding this account, demonstrating CAC's pattern of automated responses through the E-OSCAR system and failure to review their own payment records as required by their corporate procedures. The fact that I had to dispute twice with Experian, and that both disputes resulted in the same automated responses without any meaningful investigation, proves that CAC was systematically using the E-OSCAR system to provide generic responses rather than conducting the account-specific payment history reviews mandated by their own internal policies.

## VIII. THE SMOKING GUN: CAC'S OWN CORPORATE POLICIES

P.5

1. **Exhibit HH (CAC Production Documents - pages 1-3):** CAC's own 70-page production documents provide devastating evidence of systematic corporate policy violations: "May Not Investigate Less" Policy (page 1) shows CAC's explicit policy stating "Team members may need to investigate more than the minimum for each dispute code or type based upon the facts and circumstances in the dispute and account, but they may not investigate less." Payment Dispute Procedures (page 3) show CAC's specific procedures requiring them to "Review Payment History to determine if payments have been made and the amounts" and "Review account notes to determine if a misapplied payment occurred." Universal Investigation Requirements (page 2) show CAC's procedures requiring all team members to "Review and verify consumer and account information against the Company's systems." CFPB Escalation Requirements (page 3) show CAC's procedures requiring CFPB complaints to be escalated to "regulatory.compliance@creditacceptance.com."

2. These internal documents prove CAC had specific knowledge of proper investigation procedures and willfully chose to violate their own minimum standards by deploying automated responses and frivolous determinations. The significance of Exhibit HH cannot be overstated - it represents CAC's own admission that they have specific procedures for payment disputes, yet they systematically chose to ignore these procedures when handling my disputes. This transforms their conduct from mere negligence to willful violation of their own corporate standards, demonstrating the intentional nature of their FCRA violations and supporting claims for maximum statutory and punitive damages.

## IX. SYSTEMATIC PATTERN OF VIOLATIONS

1. The exhibits demonstrate a clear pattern of systematic FCRA violations by CAC: False Reporting where CAC reported inaccurate payment information despite having accurate records (Exhibits P, AA, HH). Sham Investigations where CAC failed to conduct reasonable investigations despite multiple disputes (Exhibits E, Y, FF, GG). Bad Faith Conduct where CAC made frivolous determinations without proper basis (Exhibit Y). Corporate Policy Violations where CAC systematically violated their own procedures for payment disputes and CFPB escalation (Exhibit HH).

2. The exhibits also document concrete harm caused by CAC's violations: Housing Denials including rental rejections due to false reporting (Exhibits C, G). Credit Denials including American Express denial citing CAC's false reporting (Exhibit L). Medical Harm including anxiety treatment and emotional distress requiring medical intervention (Exhibits H, T, EE). Ongoing Harassment including workplace disruption and stress (Exhibits T, U).

## X. THIRD-PARTY VALIDATION OF SYSTEMATIC VIOLATIONS

P.6

1. The systematic nature of CAC's violations is validated by independent third parties: Dual Bureau Deletion where both Equifax and Experian independently concluded CAC's reporting was so problematic that complete deletion was necessary (Exhibits BB, DD). Third-Party Creditors where American Express and rental companies cited CAC's reporting as basis for denials (Exhibits C, G, L). Medical Professionals where healthcare providers documented harm caused by CAC's conduct (Exhibits H, EE). CFPB Process where federal complaint process revealed CAC's systematic misrepresentations (Exhibits I, P, Q, R).

# XI. CAC'S KNOWLEDGE AND WILLFUL CONDUCT

1. The exhibits prove CAC's actual knowledge of the accurate payment information and their willful decision to maintain false reporting: CAC's Own Transaction History where Exhibit P shows CAC had accurate payment information in their systems. Bank Statement Verification where Exhibit AA provides independent verification of the exact payments CAC claimed were never made. Corporate Procedures where Exhibit HH proves CAC had specific procedures for payment disputes but chose to ignore them. Multiple Notices where Exhibits A, B, I, W, Z show CAC received multiple formal notices of their violations. Frivolous Determination where Exhibit Y shows CAC's bad faith determination made without proper investigation.

# XII. DAMAGES AND ONGOING HARM

1. The exhibits document extensive damages caused by CAC's systematic violations: Actual Damages including housing denials (Exhibits C, G), credit denials (Exhibit L), medical expenses (Exhibits H, EE), lost opportunities. Emotional Distress including documented anxiety, stress, and medical treatment requirements (Exhibits H, T, EE). Ongoing Harm including continued false reporting causing ongoing credit damage (Exhibit CC). Economic Loss including lost housing opportunities, increased costs, workplace disruption (Exhibits C, G, T, U).

# XIII. CONCLUSION

1. The exhibits attached hereto and incorporated by reference demonstrate CAC's systematic, willful violations of the Fair Credit Reporting Act and Michigan Consumer Protection Act. CAC possessed accurate payment information in their own systems (Exhibits P, AA), had specific corporate procedures for investigating payment disputes (Exhibit HH), yet chose to maintain false reporting for over 32 months while ignoring multiple opportunities to cure their violations.

P.7

2. CAC's conduct represents the most egregious form of FCRA violations: systematic corporate policy violations combined with willful maintenance of false information despite actual knowledge of the truth. The unprecedented dual-bureau deletion (Exhibits BB, DD) provides independent third-party validation of the systematic nature of CAC's violations. CAC had multiple opportunities to cure their violations, including formal disputes through two credit reporting agencies, a CFPB complaint, direct communications with their representatives, certified mail notices, and a formal notice of intent to sue. Despite all these opportunities, CAC chose to maintain their false reporting and even escalated their bad faith conduct by deeming my legitimate dispute "frivolous or irrelevant" without conducting the payment history review required by their own corporate procedures.

3. The documented harm (Exhibits C, G, H, L, T, EE) and CAC's bad faith conduct warrant maximum statutory and punitive damages to deter this type of systematic corporate misconduct. The harm I suffered includes concrete housing denials that prevented me from securing suitable living arrangements, credit denials that limited my financial options, medical expenses and treatment for anxiety and stress directly caused by CAC's conduct, workplace disruption requiring me to leave work early to seek medical attention, and ongoing emotional distress that continues to affect my daily life. This harm was not incidental or accidental but was the direct and foreseeable result of CAC's systematic decision to maintain false information despite having accurate records in their possession.

4. I have reviewed each exhibit referenced in this affidavit and attest that they are true and accurate copies of the original documents and communications. Each exhibit supports the systematic pattern of violations and harm documented herein. The exhibits create an unbreakable chain of evidence showing CAC's progression from initial false reporting, through multiple opportunities to cure their violations, to their ultimate bad faith determination that my legitimate dispute was "frivolous." The bank statements in Exhibit AA provide irrefutable proof that I made the payments CAC claimed were never made, while their own corporate policies in Exhibit HH prove they had specific procedures for payment disputes that they chose to ignore. The medical documentation in Exhibit EE and workplace records in Exhibit T provide concrete evidence of the severe personal harm their conduct caused, while the dual-bureau deletion documented in Exhibits BB and DD provides unprecedented third-party validation that CAC's reporting was so fundamentally flawed that major credit reporting agencies concluded complete removal was the only appropriate remedy.

**FURTHER AFFIANT SAYETH NAUGHT.**

**SWORN STATEMENT**

P.B

I, Branden Trapp, declare under penalty of perjury under the laws of the State of Michigan that the foregoing is true and correct to the best of my knowledge, information, and belief.

**Signature:** _____

**Branden Trapp**

**Date:** _6_ day of October, 2025

## NOTARY ACKNOWLEDGMENT

State of Michigan

County of Oakland

On this _6_ day of October, 2025, before me personally appeared Branden Trapp, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Michigan that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

**Signature:** _____

**Notary Public** Mikel Clark

My commission expires: 9-19-2029

MIKEL CLARK
Notary Public - State of Michigan
County of Wayne
My Commission Expires Sep 19, 2029
Acting in the County of Oakland

## COMPLETE EXHIBIT LIST

The following exhibits are attached hereto and incorporated by reference:

**Timeline Exhibits (A-Z):**

- **Exhibit A:** Equifax dispute sent via USPS Certified Mail (10/04/2024)
- **Exhibit B:** Experian dispute sent via USPS Certified Mail (10/06/2024)
- **Exhibit C:** Rondo rental denial and communication with leasing agent (10/11/2024)
- **Exhibit D:** Payment arrangement documents showing $450 monthly plan (10/2024)
- **Exhibit E:** Experian dispute results stating CAC 'certified' information (11/08/2024)
- **Exhibit F:** Equifax payment history showing inaccurate duplicate entries (11/08/2024)
- **Exhibit G:** Adverse rental notice from Rondo due to CAC reporting (11/11/2024)
- **Exhibit H:** Therapist recommendation for anxiety treatment (11/15/2024)
- **Exhibit I:** CFPB complaint and Notice of Violations (11/20/2024)

P.9

- **Exhibit J:** Communication with Julia Clark regarding CFPB complaint (11/27/2024)
- **Exhibit K:** Claimant response requesting resolution (11/27/2024)
- **Exhibit L:** American Express denial due to CAC reporting (11/30/2024)
- **Exhibit M:** Follow-up email to Julia for status update (12/04/2024)
- **Exhibit N:** Julia's response stating investigation ongoing (12/04/2024)
- **Exhibit O:** Claimant reply noting urgency and settlement deadline (12/04/2024)
- **Exhibit P:** CAC response to CFPB with inaccurate transaction history (12/05/2024)
- **Exhibit Q:** Analysis of CFPB response letter's deficiencies (12/05/2024)
- **Exhibit R:** Claimant response to CFPB highlighting misrepresentations (12/05/2024)
- **Exhibit S:** Final email notice to resolve or face arbitration (12/05/2024)
- **Exhibit T:** Pharmacist note and work documentation of distress (12/06/2024)
- **Exhibit U:** Request for email-only communication (12/06/2024)
- **Exhibit V:** Julia's email limiting communication to phone only (12/06/2024)
- **Exhibit W:** Priority Mail notice reiterating dispute and arbitration warning (12/06/2024)
- **Exhibit X:** Updated Equifax report showing continued inaccuracies (12/13/2024)
- **Exhibit Y:** CAC response deeming dispute 'frivolous or irrelevant' (12/26/2024)
- **Exhibit Z:** Final notice of intent and escalation to arbitration (01/09/2025 - 02/11/2025)

**Supporting Documentation Exhibits (AA-HH):**

- **Exhibit AA:** Chase Bank Statements (pages 1-4) and Chime Bank Screenshots (pages 5-6)
- **Exhibit BB:** Experian Credit Report showing CAC tradeline removed (pages 1-9)
- **Exhibit CC:** TransUnion Credit Report showing continued inaccuracies (pages 1-7)
- **Exhibit DD:** Equifax suppression of CAC tradeline (page 1)
- **Exhibit EE:** Dr. Natheer treatment documentation for stress and anxiety (pages 1-4)
- **Exhibit FF:** Equifax ACDV records (pages 1-4)
- **Exhibit GG:** Experian ACDV records (pages 1-9)
- **Exhibit HH:** CAC's 70-page production documents showing corporate policies (pages 1-3)

P. 10

# CERTIFICATE OF SERVICE

**BRANDEN TRAPP v. CREDIT ACCEPTANCE CORPORATION**

**American Arbitration Association**

I, Branden Trapp, hereby certify that on _____10/6_____, 2025, I served true and correct copies of the following documents by electronic mail:

**DOCUMENTS SERVED:**

1. Claimant's Written Evidentiary Submission

2. Affidavit of Branden Trapp

3. Exhibits A through HH

**SERVED UPON:**
Respondent's Counsel

Email: sking@swkinglaw.com

I declare under penalty of perjury that the foregoing is true and correct.

**Signature:** _____

**Branden Trapp**

**Date:** _____10/6_____, 2025

# CLAIMANT'S EXHIBIT BINDER

In the Matter of Arbitration Between:

Branden Trapp

Claimant

v.

Credit Acceptance Corporation

Respondent

Case Number: AAA Case No. 01-25-0001-3821

Arbitrator: Sheri B. Cataldo

Administered By: American Arbitration Association (AAA)

Claimant's Supporting Exhibits

Submitted By:

Branden Trapp

Pro Se Claimant

branden.trapp@gmail.com

Date of Submission: _10/6/25_

# EXHIBIT A

Branden Trapp

10870 Marne St.

Detroit, MI 48224

Branden.trapp@gmail.com

(586) 353-8258

**CONFIDENTIAL**



10/03/2024 – Sent via certified mail, return receipt requested

**Equifax Information Services LLC**

**P.O. Box 740256**

**Atlanta, GA 30348**

**RE:** Dispute of Inaccurate Information Pursuant to the Fair Credit Reporting Act (FCRA)

Dear Equifax,

      Thank you for providing me with my consumer report, Confirmation # 4251608627. I am writing to dispute inaccurate information on my credit report and request an investigation pursuant to the FCRA. Please investigate, verify and correct the following discrepancies:

### *Inaccurate Addresses:*

1. Remove the address: *4517 N. Rome Ave. J205 Tampa, FL 33603* (not my current or previous residence)
2. Remove the address: *12235 Wilshire Dr. Detroit, MI 48213* (not my current or previous residence)

### *Employment Update:*

1. Remove *USPS* (never was employed here)
2. Update my employment information to reflect my current employers:
   - Mr. Documents LLC
   - Rocket Mortgage

### *Account Disputes:*

1. *OpenSky Capital Bank NA (Account 5753)*
   - Inaccurate balance
   - Inaccurate status
2. *First Premier Bank (Account 5397)*
   - Inaccurate balance
   - Inaccurate high credit limit
3. *Dept of Education/Aidvantage (Accounts 0091 and 0240)*
   - Invalid open date
   - Inaccurate balance
   - Invalid date of late payment

- Duplicate accounts with different balances (please merge or delete duplicate)

**4.  *Credit Acceptance (Account 9104)***
   - Invalid date of delinquency
   - Inaccurate account history
   - Inaccurate high limit balance
   - Inaccurate monthly amount



## Pursuant to 15 U.S.C. § 1681i(a), I request that you:

1. **Investigate these disputes.**
2. **Update or delete the inaccurate information.**
3. **Provide me with a corrected copy of my consumer report.**

Please find a copy of the required identification information (I.D. Card and Social Security Card) attached with this notice.

Thank you for your prompt attention to this matter.

Sincerely,

/s/Branden L. Trapp

Branden L. Trapp

CONFIDENTIAL

**CLAIMANT'S EXHIBIT**

_A_    _p.3_

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Equifax
P.O. Box 740256
Atlanta, GA 30348

9590 9402 7071 1251 6802 75

2. Article Number (Transfer from service label)

9589 0710 5270 1029 6315 48

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)          C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ured Mail
   ured Mail Restricted Delivery
   er $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted
   Delivery
☐ Signature Confirmation™
☐ Signature Confirmation
   Restricted Delivery

Domestic Return Receipt

**CONFIDENTIAL**



CREDIT FILE : September 07, 2024

Confirmation # 4251608627

**CONFIDENTIAL**



Dear BRANDEN LAVAR TRAPP:

Thank you for requesting your credit file, commonly called a Consumer Credit Report. Your credit file contains information received primarily from companies which have granted you credit and from public record sources. Great care has been taken to report this information correctly. Please help us in achieving even greater accuracy by reviewing all of the enclosed material carefully.

Thank you for also requesting your credit score. Credit scores are generated by applying a risk scoring model to information in an individual's credit file.

| Your VantageScore® 3.0 credit score, based on Equifax data, was 538 as of September 07, 2024. |
|---|

This credit score is a VantageScore® 3.0 based on information in your Equifax credit file as of the date indicated above.

The VantageScore provided uses a proprietary credit scoring model designed by VantageScore, LLC. The range of possible credit scores for the VantageScore provided is 300 to 850. There are many other credit scores and models in the marketplace, including different VantageScores. Please keep in mind, third parties are likely to use a different credit score when evaluating your creditworthiness. Also, third parties may take into consideration items other than your credit score or information found in your credit file, such as your income.

**The key factors that affected your credit score are:**

| Reason Code | Explanation |
|---|---|
| 4 | The balances on your accounts are too high compared to loan amounts |
| 12 | The date that you opened your oldest account is too recent |
| 44 | Too many bankcard or revolving accounts with delinquent or derogatory status |
| 63 | Lack of sufficient relevant real estate account information |

You may complete the enclosed Research Request Form and return it to:

**Equifax Information Services LLC**
**P.O. Box 740241**
**Atlanta, GA 30374**

***NOTE: Sending the Research Request Form to any other address will delay the processing of your request.***
Please note, when you provide documents, including a letter, to Equifax as part of your dispute, the documents may be submitted to one or more companies whose information are the subject of your dispute.

| For an added convenience, use one of the below options to start an investigation or check the status of your dispute. |
|---|
| Visit us at **equifax.com/personal/disputes** or Call us at (888) EQUIFAX, (888) 378-4329. |

00000188 01375 0001-0010 DECE00000072414801100 L 00000330

**CONFIDENTIAL**



Status - Pays As Agreed  Type of Account - Open  Type of Loan - Secured Credit Card  Whose Account - Individual Account  ADDITIONAL INFORMATION - Fixed Rate Secured
Credit Card

## CREDIT ACCEPTANCE CORPORAT  PO BOX 5070 SOUTHFIELD MI 480865070 : 5103341506

Status - Over 120 Days Past Due  Type of Account - Installment  Type of Loan - Auto  Whose Account - Individual Account  ADDITIONAL INFORMATION - Auto  150 Days Past
Due  Fixed Rate

### Account History
### with Status Codes

Account History 07 2024 06 2024 05 2024 04 2024 03 2024 02 2024
5        4        3        2        2        1

### Historical Account Information

| Date of Last | Balance | Date of Last Payment | Actual Payment Amount | Scheduled Payment amount | Date of Last Designated | Amount Past Due | Type of Loan |
|---|---|---|---|---|---|---|---|
| 11/10/2023 | $10,631 | | | | 06/Months | | 0 |
| 9104 | | | | | | | |
| 07/24 | $18,220 | $417 | 03/25/2024 | $16,631 | $1,845 | Auto | |
| 08/24 | No Data Available | | | | | | |
| 06/24 | $17,928 | $417 | 03/25/2024 | $16,631 | $1,407 | Auto | |
| 05/24 | $17,628 | $417 | 03/25/2024 | $16,631 | $986 | Auto | |
| 04/24 | $17,349 | $417 | 12/08/2023 | $16,631 | $855 | Auto | |
| 03/24 | $17,349 | $417 | 12/08/2023 | $16,631 | $855 | Auto | |
| 02/24 | $17,067 | $417 | 12/08/2023 | $16,631 | $417 | Auto | |
| 01/24 | $16,766 | $417 | 12/08/2023 | $16,631 | | Auto | |
| 12/23 | $16,496 | $417 | 12/08/2023 | $16,631 | | Auto | |

## DEPT OF ED/ADVANTAGE  1891 METRO CENTER DR RESTON VA 20190 : 8007221300

| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Amount Past Due | Activity Designator | Creditor Classification |
|---|---|---|---|---|---|---|---|
| 0240 | 06/11/2024 | $1,167 | | Deferred | | | |

| Date of Last Payment | Balance Amount | Past Due | Amount Past Due | Date of Last Designated | Date of Las Reported | Date of Last Activity | Date Closed/Date Paid |
|---|---|---|---|---|---|---|---|
| 07/31/2024 | $1,167 | $0 | | | 07/2024 | 10/2026 | |

**** End of Credit File ****
00000330-DISC

4251E08627-APP-Ddd1011900C02b33-09072024

# EXHIBIT B

*Pi 1*

Branden Trapp
10870 Marne St.
Detroit, MI 48224
Branden.trapp@gmail.com
(586) 353-8258

*Tracking # 9589 0 710527010296315155*

10/06/2024 – Sent via certified mail, return receipt requested

**Experian**
**P.O. Box 9701**
**Allen, Tx 75013**

```
CLAIMANT'S
EXHIBIT
B.      p.1
```

**RE:** Dispute of Inaccurate Information Pursuant to the Fair
Credit Reporting Act (FCRA)

Dear Experian,

**CONFIDENTIAL**

      Thank you for providing me with my consumer report via
annual credit report, report # 2031-7283-82. I am writing to
dispute inaccurate information in my credit report and request an
investigation pursuant to the FCRA. Please investigate, verify
and correct the following discrepancies:

      **My name is Branden Lavar Trapp, remove all other
names.**

      ***Employment Update:***

    1. Update my employment information to reflect my
       current employers:
       - Mr. Documents LLC
       - Rocket Mortgage

      ***Account Disputes:***

    1. ***OpenSky Capital Bank NA (Account 462192)***
      - Inaccurate balance
      - Inaccurate status

    2. ***First Premier Bank (Account 517800)***
      - Inaccurate balance
      - Inaccurate high credit limit

    3. ***Credit Acceptance (Account 11205)***
      - Invalid date of delinquency
      - Inaccurate account history
      - Inaccurate high limit balance
      - Inaccurate monthly amount

    4. ***Oportun (Account 482)***
      - Inaccurate status

***Hard Inquires:***

  1. SBA – 03/01/24
  2. Discover Financial Services – 01/25/23, 12/10/23
  3. Credit Union One – 11/13/23, 11/9/23, 11/8/23
  4. Bank Of America – 11/08/23, 10/23/22
  5. Nowcom/Westlake Financial – 11/8/23

7. Amex - 9/22/23
8. WFBNA Card - 1/28/23, 9/15/23
9. JPMCB Card – 1/18/23, 3/14/23, 9/13/23

10. Centric FCU - 2/20/23

11. Credit Acceptance – 02/13/2023

12. Carvana LLC – 10/26/22



CLAIMANT'S EXHIBIT
B. p.2

**Pursuant to 15 U.S.C. § 1681i(a), I request that you:**
1. **Investigate.**
2. **Update or delete inaccurate information.**
3. **Provide me with a corrected copy of my consumer report.**

Please find a copy of the required identification information (I.D. Card and Social Security Card) attached with this notice.

Thank you for your prompt attention to this matter.

Sincerely,

/s/Branden L. Trapp

Branden L. Trapp

**CONFIDENTIAL**

# CONFIDENTIAL



Annual Credit Report - Experian

Prepared For

## BRANDEN TRAPP

**Personal & Confidential**

**Date Generated**   Oct 2, 2024

**Report Number**   2031-7283-82

| At a Glance | 11 Accounts | 0 Public Records | 20 Hard Inquiries |
| --- | --- | --- | --- |

## Personal Information

| 3 Names | 1 Addresses | 1 SSN Variations | 1 Employers | 1 Personal Statements | 2 Other Records |
| --- | --- | --- | --- | --- | --- |

Because your personal information is reported by you, your creditors, and other sources, it's typical to see small variations in reported personal information, like names and addresses. For security reasons, many of these items can't be disputed online, but don't worry— they don't affect your credit score.

### Names

| | | |
| --- | --- | --- |
| **BRANDEN TRAPP** | **BRANDEN L TRAPP** | **BRANDEN LAVAR TRAPP** |
| Name ID #12995 | Name ID #29454 | Name ID #3668 |

# CONFIDENTIAL



CLAIMANT'S
EXHIBIT
B.   p4.

10/2/24, 6:29 PM                                        Annual Credit Report - Experian

## CREDIT ACCEPTANCE CORPORATION
**POTENTIALLY NEGATIVE**

### Account Info

| | | | |
|---|---|---|---|
| Account Name | CREDIT ACCEPTANCE CORPORATION | Balance | $17,972 |
| Account Number | 1120XXXXX | Balance Updated | 09/10/2024 |
| Account Type | Auto Loan | Recent Payment | $507 as of 8/25/2024 |
| Responsibility | Individual | Monthly Payment | $417 |
| Date Opened | 11/10/2023 | Original Balance | $16,631 |
| Status | Open. $2,343 past due as of Sep 2024. | Highest Balance | - |
| Status Updated | Sep 2024 | Terms | 66 Months |

### Payment History

| | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2024 | ✔ | 30 | 60 | 60 | 90 | 120 | 150 | 150 | 180 | — | — | — |
| 2023 | — | — | — | — | — | — | — | — | — | — | — | ✔ |

| | | | |
|---|---|---|---|
| ✔ | Current / Terms met | 30 | Past due 30 days |
| 60 | Past due 60 days | 90 | Past due 90 days |
| 120 | Past due 120 days | 150 | Past due 150 days |
| 180 | Past due 180 days | | |

### Payment history guide

180 days past due as of Sep 2024

150 days past due as of Aug 2024, Jul 2024

120 days past due as of Jun 2024

90 days past due as of May 2024

https://usa.experian.com/acr/printReport?type=CDI

6/58

# CONFIDENTIAL



CLAIMANT'S
EXHIBIT
B.   p.5

10/2/24, 6:29 PM                                              Annual Credit Report - Experian

60 days past due as of Apr 2024, Mar 2024

30 days past due as of Feb 2024

By Oct 2030, this account is scheduled to go to a positive status.

 **Balance Histories**

| Date | Balance | Scheduled Payment | Paid |
|------|---------|-------------------|------|
| Aug 2024 | $18,200 | $417 | $750 on 7/18/2024 |
| Jul 2024 | $18,220 | $417 | $0 on 3/25/2024 |
| Jun 2024 | $17,928 | $417 | $0 on 3/25/2024 |
| May 2024 | $17,628 | $417 | $0 on 3/25/2024 |
| Apr 2024 | $17,357 | $417 | $742 on 3/25/2024 |
| Mar 2024 | $17,349 | $417 | $0 on 12/8/2023 |
| Feb 2024 | $17,067 | $417 | $0 on 12/8/2023 |
| Jan 2024 | $16,766 | $417 | $0 on 12/8/2023 |
| Dec 2023 | $16,496 | $417 | $417 on 12/8/2023 |

## Additional Info

The original amount of this account was $16,631

 **Contact Info**

| Address | PO BOX 5070,<br>SOUTHFIELD MI 48086 |
|---------|--------------------------------------|
| Phone Number | (800) 634-1506 |

CONFIDENTIAL

CLAIMANT'S
EXHIBIT
B.   p.6

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse
so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
or on the front if space permits.

1. Article Addressed to:

Experian
P.O. Box 9701
Allen, Tx 75013

9590 9402 7071 1251 6876 01

2. Article Number (Transfer from service label)

4589 0710 5270 1024 6316 55

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X                                    ☐ Agent
                                     ☐ Addressee

B. Received by (Printed Name)        C. Date of Delivery

Experian

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:          ☐ No

OCT 16 2024

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery
(over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted
Delivery
☐ Signature Confirmation™
☐ Signature Confirmation
Restricted Delivery

Domestic Return Receipt

# EXHIBIT C

11/27/24, 6:09 PM

(no subject) - branden.trapp@gmail.com - Gmail

≡ **M** Gmail

🔍 debby

🖂•



**Leasing Office** <leasing@rentmichiganhouses.com>

Oct 11, 2024, 4:13PM

to me

Hello,

Your application was run and a copy was sent to your email address.

There are two items one that would need to be taken care of prior to approval-
The car note has to be paid current-
Then we can move forward

**Branden Trapp** <branden.trapp@gmail.com>

Oct 11, 2024, 5:13PM

to Leasing

Hello Debbi

I am up to date and on a payment plan with my car note. what's reporting is inaccurate.

4:58 ◀

CLAIMANT'S EXHIBIT C. [signature]

**CONFIDENTIAL**

7 of 13

1/1

# EXHIBIT D

4:58



CONFIDENTIAL

You have not added any AutoPay schedules yet.

Add AutoPay Schedule

## Scheduled Payments/ Arrangements

**$450.00**

Pay now

Upcoming Payment Arrangement

Promised by: **10/31/2024**

**$450.00**

Upcoming Payment Arrangement

Promised by: **11/30/2024**

See All Scheduled Items

Make a Payment

Last Payment Amount

# EXHIBIT E



CLAIMANT'S
EXHIBIT
E.   pl

 **Gmail**         **CONFIDENTIAL**                          Branden Trapp <bra

---

## Important: Your dispute is completed, Branden

---

**Experian Alerts** <support@s.usa.experian.com>                         Fri, Nov 8, 2024 at 9:07 AM
Reply-To: Experian <reply-fe8e11757067007e7d-14931_HTML-1363411549-7327132-204174@e.usa.experian.com>
To: branden.trapp@gmail.com

---

                         Membership ID# 10016969520423    Sign In



# Hi Branden, your dispute results are ready

### Dispute results

Your dispute report number **3552-2022-68** results are ready
for review.


View results

**How likely are you to recommend Experian?**

Experian

Prepared For

# BRANDEN LAVAR TRAPP

Personal & Confidential

**Date Generated**  Nov 8, 2024
**Report Number**  3552-2022-68

# CONFIDENTIAL

## About Dispute Results

Our reinvestigation of the dispute you recently submitted is now complete. If we were able to make changes to your credit report based on information you provided, we have done so. Otherwise we have contacted the company reporting the information you disputed, supplied them all relevant information and any documents you gave us with your dispute, and instructed them to: review all information we provide them about your dispute; verify the accuracy of the information; provide us a response to your dispute; and update their records and systems as necessary.

If an item you disputed is not in the list of results below, it was either not appearing in your credit file or it already reflected the requested status at the time of our reinvestigation.

## Here are your results

### OPENSKY CBNK

Account • 462192XXXXXXXXXX

The information you disputed has been verified as accurate; however, information unrelated to your dispute has been updated. Please review your report for the details.



Verified and Updated

CLAIMANT'S
EXHIBIT
E.
P.2

Experian

## OPORTUN/PROGRESO FINAN

Account • 482XXXX

The company that reported the information has certified to Experian that the information is
accurate. This item was not changed as a result of our processing of your dispute. Please
review your report for the details.



Remains

## CREDIT ACCEPTANCE CORP

Account • 11205XXXX

The company that reported the information has certified to Experian that the information is
accurate. This item was not changed as a result of our processing of your dispute. Please
review your report for the details.



Remains

## FIRST PREMIER BANK

Account • 517800XXXXXXXXX

Information on this item has been updated. Please review your report for the details.

You can contact FIRST PREMIER BANK at 601 S MINNESOTA AVE, SIOUX FALLS , SD 57104 or (800)
987-5521

Updated



 **After your dispute**

  **Account Info**

**CONFIDENTIAL**

 CLAIMANT'S EXHIBIT

# EXHIBIT F

CLAIMANT'S EXHIBIT

F. p.1

 **Balance Histories**

| Date | Balance | Scheduled Payment | Paid |
|------|---------|-------------------|------|
| **Sep 2024** | **$213** | **$0** | **$1,228 on 9/3/2024** |
| **Aug 2024** | **$355** | **$0** | **$1,780 on 8/3/2024** |

**Additional info**

Between Aug 2024 and Sep 2024, your credit limit/high balance was $0

**CONFIDENTIAL**

 **Contact Info**

| | |
|---|---|
| Address | **PO BOX 417,** <br> **SAN FRANCISCO CA 94104** |
| Phone Number | **(844) 244-6363** |

# CREDIT ACCEPTANCE CORPORATION

**POTENTIALLY NEGATIVE**

 **Account Info**

| | | | |
|---|---|---|---|
| Account Name | **CREDIT ACCEPTANCE CORPORATION** | Balance | **$17,813** |
| | | Balance Updated | **10/10/2024** |
| Account Number | **11205XXXX** | Recent Payment | **$450 as of 9/30/2024** |
| Account Type | **Auto Loan** | Monthly Payment | **$417** |
| Responsibility | **Individual** | Original Balance | **$16,631** |
| Date Opened | **11/10/2023** | Highest Balance | **-** |
| Status | **Open. $2,311 past due as of Oct 2024.** | Terms | **66 Months** |
| Status Updated | **Sep 2024** | | |

## Payment History

| | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **2024** | ✔ | 30 | 60 | 60 | 90 | 120 | 150 | 150 | 180 | 180 | — | — |
| **2023** | — | — | — | — | — | — | — | — | — | — | — | ✔ |

| | | | |
|---|---|---|---|
| ✔ | Current / Terms met | 30 | Past due 30 days |
| 60 | Past due 60 days | 90 | Past due 90 days |
| 120 | Past due 120 days | 150 | Past due 150 days |
| 180 | Past due 180 days | | |



**CONFIDENTIAL**

## Payment history guide

180 days past due as of Oct 2024, Sep 2024

150 days past due as of Aug 2024, Jul 2024

120 days past due as of Jun 2024

90 days past due as of May 2024

60 days past due as of Apr 2024, Mar 2024

30 days past due as of Feb 2024

By Oct 2030, this account is scheduled to go to a positive status.

 **Balance Histories**

| Date | Balance | Scheduled Payment | Paid |
|------|---------|-------------------|------|
| **Sep 2024** | **$17,972** | **$417** | **$507 on 8/25/2024** |
| **Aug 2024** | **$18,200** | **$417** | **$750 on 7/18/2024** |
| **Jul 2024** | **$18,220** | **$417** | **$0 on 3/25/2024** |
| **Jun 2024** | **$17,928** | **$417** | **$0 on 3/25/2024** |
| **May 2024** | **$17,628** | **$417** | **$0 on 3/25/2024** |
| **Apr 2024** | **$17,357** | **$417** | **$742 on 3/25/2024** |
| **Mar 2024** | **$17,349** | **$417** | **$0 on 12/8/2023** |
| **Feb 2024** | **$17,067** | **$417** | **$0 on 12/8/2023** |
| **Jan 2024** | **$16,766** | **$417** | **$0 on 12/8/2023** |
| **Dec 2023** | **$16,496** | **$417** | **$417 on 12/8/2023** |

### Additional info

The original amount of this account was $16,631

 **Contact Info**

| Address | **PO BOX 5070,** |
| | **SOUTHFIELD MI 48086** |
| Phone Number | **(800) 634-1506** |

**Comment**

# EXHIBIT G

# RONDO INVESTMENT

23204 Greater Mack ‖ St Clair Shores MI 48080 ‖ Phone: 313-521-6666

**ADVERSE NOTICE**

CLAIMANT'S
EXHIBIT

*A   p.1*

Branden Trapp
10870 Marne St.
Detroit, MI 48224

**CONFIDENTIAL**

November 11, 2024

Dear Mr. Trapp

*Re: Rental Application for 16628 E. Eight Mile Road, Detroit, MI 48205*

We regret to inform you that your rental application for the property located at 16628 E. Eight Mile Road, Detroit, MI 48205, has been denied. This decision was based on information obtained from your consumer credit report from Equifax.

The specific reasons for this denial are:

- Your Credit Acceptance account is 120 days or more than four payments past due and not showing as disputed.
- Your First Premier and OpenSky Capital Bank accounts are charged off and not showing as disputed.

As required by the Fair Credit Reporting Act (FCRA), we are providing you with the following disclosure:

You have the right to obtain a copy of the consumer report that was used in making this decision. You may obtain this report, free of charge, from:

Equifax Information Services LLC
P.O. Box 740241
Atlanta, GA 30348

You also have the right to dispute the accuracy or completeness of any information in the consumer report. If you wish to dispute any information, you should contact Equifax directly.

Sincerely,

Debby - Leasing Dept and Office manager
23204 Greater Mack St Clair Shores, MI 48080
313-521-6666 Ext 202 -office//586-441-7510
Mon-Thur from 9am-4pm – Fridays-9-12
Website: www.rentmichiganhouses.com

# EXHIBIT H

CONFIDENTIAL – *Medical*





# WAYNE STATE
## School of Medicine

November 15, 2024

To Whom This May Concern,

My name is Tori-Ann Bright LMSW, and I am a licensed clinical therapist at Wayne State University Tolan Park. Branden Trapp (10/12/91) has been seeing me weekly for mental health services since August 29, 2024.

Mr. Trapp recently informed me that he has been experiencing significant stress, anxiety, and depression due to his current homelessness and the inaccuracies on his credit reports, which have hindered his ability to secure housing and obtain credit. These challenges have taken a substantial toll on his mental health and overall well-being.

During our session, I observed a noticeable decline in Mr. Trapp's energy and mood. To help him cope with his anxiety, I have recommended a 30-day course of anxiety medication.

I strongly believe that addressing the underlying issues contributing to Mr. Trapp's mental health concerns, including resolving the inaccuracies on his credit reports and securing stable housing, is crucial to his recovery and overall well-being.

Thank you,

s/Tori-Ann S. Bright
Tori-Ann S. Bright **LMSW**
Psychosocial Team Lead

# EXHIBIT I

11/20/24, 10:33 PM

Complaint Print



An official website of the United States Government

# cfpb

Consumer Financial
Protection Bureau

(https://www.consumerfinance.gov/)

CONFIDENTIAL

Submit a complaint / Complaint filed

# Your complaint

Complaint Number 241121-17070864

## Step 1

## What product or service is your complaint about?

| PRODUCT OR SERVICE | TYPE |
|---|---|
| Credit reporting or other personal consumer reports | Credit reporting |



11/20/24, 10:33 PM

Complaint Print

## Step 2

## What type of problem are you having?

| ISSUE | TYPE OF ISSUE |
| --- | --- |
| Problem with a company's investigation into an existing problem | Their investigation did not fix an error on your report |

**HAVE YOU ALREADY TRIED TO FIX THIS PROBLEM WITH THE COMPANY?**

Yes

**DID YOU REQUEST INFORMATION FROM THE COMPANY?**

No

## Step 3

## What happened?

Under the FCRA, this creditor has violated my rights under 15 USC 1681 section 602, which states the right to privacy. 15 USC 1681 section 604a section 2 also states a CRA can only furnish an account with my written instructions. Under 15 USC 1666b, a creditor may not treat a payment on a credit card account under an open-ended Consumer Credit plan as late for any purpose. See attached notice.

CONFIDENTIAL

CLAIMANT'S EXHIBIT

Complaint Print

☑ **I WANT THE CFPB TO PUBLISH THIS DESCRIPTION ON CONSUMERFINANCE.GOV SO THAT OTHERS CAN LEARN FROM MY EXPERIENCE.**

The CFPB will take steps to remove my personal information from this description but someone may still be able to identify me. Learn how it works. I consent to publishing this description after the CFPB has taken these steps.

## What would be a fair resolution to this issue?

see attached notice.

## 1 attachment

View uploaded documents by clicking on the file name. Documents that pass virus scanning are typically available within 2 minutes of upload.

Credit accept notice and cure.pdf (6.1 MB)

**CONFIDENTIAL**



1/20/24, 10:33 PM

Complaint Print

## Step 4

### What company is this complaint about?

**COMPANY INFORMATION**
CREDIT ACCEPTANCE
CORPORATION

**SOCIAL SECURITY NUMBER (LAST FOUR DIGITS)**

•••

## Step 5

### What people are involved?

**CONFIDENTIAL**





CLAIMANT'S
EXHIBIT
I.    p.5

Branden Trapp
16628 E. Eight Mile Rd
Detroit, MI 48205
Branden.trapp@gmail.com
5863538258

**CONFIDENTIAL**

11/20/2024 – Sent via CFPB Complaint

REF: Account Number(s): 11205 for Experian and 9104 for Equifax

Credit Acceptance Corporation
25505 W. 12 Mile Rd.
Southfield, MI 48034

Dear Credit Acceptance

## <u>NOTICE OF VIOLATIONS AND OPPORTUNITY TO CURE</u>

**This is a pre-arbitration or Federal Court notice and cure.** I am writing to express my grave concerns regarding the inaccurate information your company reported to Experian and Equifax after my dispute, which resulted in violations of the Fair Credit Reporting Act (FCRA), which includes my right to privacy. Be advised, a private cause of action for 15 USC 1681s-2(b), which requires furnishers of credit information, upon receipt of the notice from a CRA of an alleged inaccuracy, to conduct a reasonable investigation and report the results of that investigation back to the CRA. See 15 USC 1681s-2(c); Purcell v. Bank of America, 659 F. 3d 622, 623 (7th Cir. 2011). I will meet all Federal Rules of Civil Procedure Rule 8 requirements to claim relief.

Despite my recent request to investigate the disputed information, the CRAs' responses have indicated that the information remains or has been verified. Your company did not conduct a reasonable investigation, leading to significant financial harm.

Upon reviewing my credit report, I discovered discrepancies and inaccurate information that adversely affected my creditworthiness and financial well-being. Specifically, under 15 USC 1681s-2, under subsection (a)(7)(A)(i), "In general: **If any financial institution that extends credit regularly and in the ordinary course of business furnishes information to a CRA furnishes negative information *SHALL* provide a notice of such furnishing of negative information, IN WRITING, to the consumer." Subsection (B)(i) states, "** In general: **The notice REQUIRED under subsection (A) *SHALL* be provided to the customer PRIOR TO, or NO LATER than 30 days after furnishing the negative information to a CRA."** As a customer and consumer, your company never gave me the required notice under this section.



# CONFIDENTIAL

Furthermore, under 15 USC 1666b – "timing of payments" under subsection (a), it states, " **A creditor may NOT treat a payment on a credit card account under an open-end consumer credit plan as late for any purpose _UNLESS_ the creditor has adopted reasonable procedures designed to ensure that each periodic statement _INCLUDING_ the information requires by 15 USC 1637(b) is MAILED or DELIVERED to the consumer not later than 21 days before the payment due date";** under 15 USC 1637 (b), your company **_shall_** transmit to me, for EACH billing cycle at the end of which there is an outstanding balance in the account and the statement that is required with each billing cycle to set forth all 12 items under this section.

Your company should have updated the account appropriately after receiving my dispute notice. However, it also violated the Truth in Lending Act (failure to provide disclosures) and the Equal Credit Opportunity Act (I was treated unfavorably as an applicant who exercised my rights under the FCRA), breached the agreement, and violated my privacy rights under § 602 of the FCRA, all of which will be evident in litigation. I know your company also violates Michigan laws and the Uniform Commercial Codes.

Despite my efforts to dispute and rectify what's been furnished through the CRAs, the information was allegedly verified without proper investigation by your company. This failure to conduct a reasonable investigation has resulted in tangible damages to me, including but not limited to:

1. Being denied credit or loans due to inaccurate information furnished without the required disclosures
2. Higher interest rates on loans and credit cards
3. Inability to secure favorable financing terms
4. Increased insurance premiums
5. Emotional distress and anxiety caused by the uncertainty of my creditworthiness.
6. As a result of your company's negligence and failure to comply with the FCRA, I am prepared to seek legal recourse to remedy the harm caused by your actions.

However, before pursuing legal action, I am extending an opportunity for you to rectify the situation and address the violation. To this end, I am offering a monetary reward of $27,932.10 as compensation for the damages incurred. You must also remove all negative information and never report negative information to any CRA. You must report to all CRAs paid as agreed on time each month, zero the balance, and send the title clean and free of liens to the address listed above.

**ALL PAYMENTS SHALL PAUSE UNTIL THIS ISSUE HAS BEEN RESOLVED, EFFECTIVE IMMEDIATELY UPON RECEIVING THIS NOTICE FROM THE CFPB. THIS IS A WARNING REPOSSION WHILE THIS DISPUTE IS PENDING WILL BE CONSIDERED A BREACH OF PEACE.**

2



# CONFIDENTIAL

Furthermore, I demand that your company take the following actions within 30 days of the date of this letter:

1. Please send me proof (tracking information or otherwise) that shows the required notice under 15 USC 1681s-2(a)(7)(A) regarding the negative information provided either before or within 30 days of furnishing it.
2. Provide the periodic statements and tracking information proving your company adopted reasonable procedures, including the 12 items listed under 15 USC 1637(b), and show it was mailed or delivered to me within 21 days before the payment due date.
3. Provide the account-level documents showing the details of the investigation. Include the name and phone number of the person(s) who conducted the investigation.
4. Provide written confirmation to me and all CRAs to whom the inaccurate, damaging, unlawful information was reported, acknowledging the corrections made.
5. If you do not comply with these demands within the specified timeframe, I will have no choice but to sue your company for damages for the harm caused by your negligence.

Please be advised that any further communication should be emailed and respond to the CFPB complaint ONLY.

I trust your company will take this matter seriously and act promptly to rectify the violations committed by your company. Your cooperation in resolving this issue amicably is appreciated.

Best regards,

By: Trapp: Lavar-Branden/representative, agent
For:        BRANDEN LAVAR TRAPP
All rights reserved
Without prejudice

3

# EXHIBIT J

Gmail - Credit Acceptance

# M Gmail

## CONFIDENTIAL

Branden Trapp <branden.trapp@gmail.com>

CLAIMANT'S
EXHIBIT
J.
P.1

## Credit Acceptance
2 messages

**Julia Clark** <jclark@creditacceptance.com>
To: Branden Trapp <branden.trapp@gmail.com>

Wed, Nov 27, 2024 at 9:34 AM

Good morning,

I am reaching out about the complaint you recently filed with the Consumer Financial Protection Bureau.  Your customer experience is important to us, and we want to address your concerns as quickly and effectively as possible.  We often find that our response to a customer inquiry is better targeted to the customer's needs when we have the opportunity to speak with the customer over the telephone and truly understand the concerns.  I know your time is precious, but a 15-minute (or less) call could go a long way towards getting you the assistance you need.  My telephone number is (855) 862-5100 please contact me anytime between 8am and 4pm Eastern Monday through Friday, to discuss your concerns.  I look forward to working with you!

Respectfully Yours,

**Julia Clark**
Senior Compliance Analyst/ Regulatory Compliance Department

GPTW Community Service Committee Member



25505 West Twelve Mile Road – Southfield – MI 48034
Phone 248.353.2700 ext. 4962



# EXHIBIT K

Gmail - Credit Acceptance

**CONFIDENTIAL**

2024 FORTUNE Magazine's
"100 Best Companies to Work For®"
Ranked #39

**Branden Trapp** <branden.trapp@gmail.com>
To: Julia Clark <jclark@creditacceptance.com>

Wed, Nov 27, 2024 at 1:44 PM

Hello Julia

Thanks for reaching out. I told you to hold on when you called because I was working. Unfortunately, I am not available for phone calls. I get off at 6 p.m. However, you can handle all communication using this email address.

Please revert to the complaint, read the attachment, respond accordingly, and provide all documentation, including the investigation information and procedures taken. Mainly, but limited to, Credit Acceptance violates 15 USC 1681s-2(b), as they did not investigate my dispute sent from the CRAs (Experian and Equifax); this violation itself caused actual damage as I was denied a house to rent because of the inaccurate information being reported. I disputed with the CRAs and this company reported back the information is accurate without investigating. This is a discriminatory practice because I was treated unfavorably as an applicant who exercised my rights under the FCRA.

This company reported negative information without my consent or instructions, violating my privacy rights; this company failed to provide the required disclosures under TILA and FCRA, which has led to more damages of being denied financial products (credit cards).

Credit Acceptance inaccurately reports late payments from February 2024 through November 2024 as "30, 60, 60, 90, 120, 150, 150, 180, 180, 180," despite payments made in April, August, September, and October. Furthermore, this company's account status shows an update of September 2024, indicating a lack of investigation. This company reports Monthly payments as $417, which is inaccurate because my initial monthly payment amount was $417.40, and the new agreed-upon amount I have with this company since August 2024 is $450 each month.

Julia, a fair resolution is advised. My fair resolution to resolve this matter amicably and outside of arbitration or court is offered as follows:

1. Monetary reward of $27,932.10 as compensation for damages incurred;
2. Remove all negative information and never report negative information to any CRA;
3. Report the account to all CRAs this company reports to, as paid as agreed on time each month, zero the balance, and send the title clean and free of liens to 1687 Channing St. Ferndale, MI 48220.

This e-mail and any attachments (hereinafter "e-mail") contain information that may be confidential, privileged, exempt from disclosure under applicable federal and state law, and/or may constitute attorney-work product. If you are not the intended recipient, any further disclosure, use, dissemination, distribution or copying of this e-mail is without authorization and strictly prohibited. If you have or think you have received this e-mail in error, please notify the sender immediately by returning this e-mail to the sender, and immediately delete this e-mail from your computer system. Neither this information block, the typed name of the sender, nor anything else in this message is intended to constitute an electronic signature unless a specific statement to the contrary is included in this message.



CLAIMANT'S EXHIBIT K. R.1

Just so you know, if we cannot agree, this dispute will not be considered closed, and I will pursue arbitration to settle this matter.

**Julia, I look forward to your response and resolution of this dispute.**

**Best Regards**
**Branden**
[Quoted text hidden]

**CONFIDENTIAL**



CLAIMANT'S
EXHIBIT

K.

02

# EXHIBIT L

**AMERICAN EXPRESS**    🔍

CLAIMANT'S EXHIBIT
L. pl

Resume your site activity

American Express
PO Box 31525
Salt Lake City, UT 84131-9925
(800) 567-1083

**CONFIDENTIAL**

November 30, 2024

Ref: 20243356003841USD

Dear Branden L Trapp,

Thank you for applying for Platinum Card?. We are writing to let you know that, unfortunately, we cannot approve your application at this time.

**Reason(s) for Our Decision**

Your FICO? score (see below)

**Information About Your FICO? Score**
We obtained your FICO score from Experian and used it in making our credit decision. Your FICO score is a number that reflects the information in your credit report. Your FICO score can change, depending on how the information in your credit report changes. On November 30, 2024, your FICO score was 550. The FICO score ranges from 300 to 850. The following are the key factors that contributed to your FICO score:

You have a serious delinquency on one or more of your accounts.
The ratio of revolving account balances to their credit limits is too high.
The time since your latest reported delinquency is too recent or unknown.
The number of accounts that have or had a delinquency.
There are too many credit inquiries on your report in the last 12 months.

FICO is a registered trademark of Fair Isaac Corporation in the United States and in other countries.

We realize this may not have been the outcome you hoped for. It's been our experience that applicants who were not approved for a new account at one time may qualify in the future. We invite you to apply again at a time when your circumstances have changed.

If you have any questions, please call us at 1-800-222-8416 or write to us at the address above. You can also learn more about managing your credit at americanexpress.com/us/content/financial-education.

Thank you for your interest in American Express.

Sincerely,

American Express Customer Care

We've provided an important notice below concerning your rights. The creditor is American Express National Bank.

**Your Right to Get Your Credit Report**

Our decision was based in whole or in part on information obtained in a report from each consumer reporting agency in this letter. Please know that the consumer reporting agency played no part in our decision and cannot supply you with the specific reasons for our decision. You have a right under the Fair Credit Reporting Act to know the information contained in your credit file at the consumer reporting agency. It can be obtained by contacting them directly. You also have a right to a free copy of your report from the consumer reporting agency if you request it within 60 days after you receive this notice. If you find that any information contained in the consumer report you receive is inaccurate or incomplete, you have the right to dispute the matter directly with the reporting agency.

?

**Experian**
701 Experian Parkway
P.O. Box 2002
Allen, TX 75013
1-888-EXPERIAN (1-888-397-3742)
www.experian.com/reportaccess
?

**CLAIMANT'S EXHIBIT**
L. p2

**CONFIDENTIAL**

**TransUnion Consumer Relations**
2 Baldwin Place
P.O. Box 1000
Chester, PA 19022
1-800-888-4213/1-800-916-8800
www.transunion.com/direct
?

**LexisNexis Risk Solutions Bureau LLC**
RiskView Consumer Inquiry Department
P.O. Box 105108
Atlanta, GA 30348-5108
866-897-8126
?

**Notice to U.S. Residents.**

The federal Equal Credit Opportunity Act prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age (provided that the applicant has the capacity to enter into a binding contract); because all or part of the applicant's income derives from any public assistance program; or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act. The federal agency that administers compliance with this law concerning American Express National Bank is the Bureau of Consumer Financial Protection, 1700 G Street NW, Washington, D.C. 20552 (the "Bureau"). The federal agencies that administer compliance with this law concerning American Express Travel Related Services Company, Inc. are the Bureau (address above) and the Federal Trade Commission, Consumer Response Center, 600 Pennsylvania Avenue NW, Washington, D.C. 20580.

?

UGNENGNTDEC0029

Answers to some of our most frequently asked questions about your application

About

# EXHIBIT M

 **Gmail**                    CONFIDENTIAL                    Branden Trapp <bra... 

CONFIDENTIAL

---

## Credit Acceptance

---

**Branden Trapp** <branden.trapp@gmail.com>                                        Wed, Dec 4, 2024 at 8:52 AM
To: Julia Clark <jclark@creditacceptance.com>

Good Morning Julia

I hope your day is going well and your Thanksgiving was great.

I have not received a response from my prior email sent on the 27th of November, it is in my best interest to settle this matter amicably but your silence makes me think Credit Acceptance is using stall tactics.

I am looking forward to hearing from you on behalf of Credit Acceptance.

Thank you
Branden Trapp/agent
all rights reserved
w/o prejudice
[Quoted text hidden]

# EXHIBIT N

 Gmail  Branden Trapp <br...@...n> 

## Credit Acceptance

**Julia Clark** <jclark@creditacceptance.com>                    Wed, Dec 4, 2024 at 10:01 AM
To: Branden Trapp <branden.trapp@gmail.com>

Good morning,

We are still investigating your concerns and will reach out to you once the investigation is complete.

Best regards,

Julia

**From:** Branden Trapp <branden.trapp@gmail.com>
**Sent:** Wednesday, December 4, 2024 8:53 AM
**To:** Julia Clark <jclark@creditacceptance.com>
**Subject:** Re: Credit Acceptance

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.
[Quoted text hidden]

# EXHIBIT O

From: **Branden Trapp** branden.trapp@gmail.com
Subject: **Re: Credit Acceptance**
Date: **Dec 4, 2024 at 3:43:17 PM**
To: **Julia Clark** jclark@creditacceptance.com

CONFIDENTIAL

Hello

I appreciate your update regarding the ongoing reinvestigation of my dispute. As a legal researcher and trade school graduate in electronic computer technology and computer coding, I have invested significant time and effort into researching case laws, regulations, federal and state laws, witness testimonials, and consulting with consumer attorneys to understand Credit Acceptance Corporation's (CAC) liability and properly state my claims and Article 3 standing.

Regrettably, I have continued to suffer additional damages since Thanksgiving week, including the loss of daily activities and family time, as I have been compelled to dedicate extensive time to researching and understanding the complexities of this matter.

I am aware that Credit Acceptance and the Credit Reporting Agencies (CRAs) failed to conduct a meaningful investigation into my dispute. Furthermore, I have discovered that the CRAs utilize the e-OSCAR computer coding system, which incorporates Metro 2 compliance, to process disputes. This system appears to have converted my dispute into an ACDV "form" and routed it overseas for processing using aggressive data matching techniques.

In light of these circumstances, I strongly recommend that we attempt to resolve this matter outside of arbitration. My previously demanded relief, aimed at mitigating my damages, remains outstanding and will expire this Friday, December 6, 2024. If this matter is not resolved by then, I will be forced to seek actual and punitive damages, which will likely be substantially higher due to the ongoing harm caused by the false and inaccurate information being furnished.

I look forward to your prompt response and resolution of this matter.

Thank you,

Branden Trapp/agent
All rights reserved

# EXHIBIT P





**CONFIDENTIAL**

December 5, 2024

*Via CFPB Portal*

Branden Trapp
10870 Marne St.
Detroit, MI 48224

      RE:    CFPB Case No. 241121-17070864
              Credit Acceptance Account No. 112059104

Dear Branden Trapp:

      Thank you for your continued feedback and for taking the time to speak with our Senior Compliance Analyst, Julia. I understand you believe that Credit Acceptance has failed to conduct a reasonable investigation and violated certain statutes. I hope this letter provides clarity.

      As a furnisher under the federal Fair Credit Reporting Act, Credit Acceptance is required to accurately report information to the credit reporting agencies and takes its obligation to accurately report seriously. I've enclosed your Retail Installment Contract, which you signed to finance the purchase of a Chevrolet Equinox. Under the contract terms, payments of $417.40 are due by the 10th day of each month. As you can see from the enclosed Transaction History, the account has been past due since January 2024. Accordingly, as of November 10, 2024, Credit Acceptance reported your account as "180 days or more past the due date". Because this credit information is consistent with your account history, we are furnishing accurate information about your account status to the credit bureaus.

      Earlier this year, you disputed this credit information that Credit Acceptance reported to the credit bureaus. In response, Credit Acceptance performed a reasonable investigation and concluded that the reported information was complete and accurate. In March, we sent you the enclosed Credit Determination Letter explaining the results of our investigation. My review of your account has shown that we properly and timely responded to all credit disputes we received.

      You have also raised privacy concerns about Credit Acceptance's reporting of your account to the credit bureaus. Credit Acceptance provided you with notice of our information sharing practices in the Welcome Letter we mailed to you on November 13, 2023. That letter also included a copy of our Privacy Notice, stating: **"We may report information about your accounts to credit bureaus. Late payments, missed payments or other defaults on your account may be reflected in your credit report."** As stated in the above-mentioned Privacy Notice, Credit Acceptance reports your account status to the credit bureaus; however, Credit Acceptance does not need your permission to furnish such information to the credit bureaus and you cannot opt out of credit reporting when your vehicle is financed through Credit Acceptance. If you would like additional information on how we collect, use, and share your personal

Branden Trapp
December 5, 2024
Page 2 of 2

**CONFIDENTIAL**



information, please visit our website at https://www.creditacceptance.com/your-credit-privacy to read our entire Privacy Notice.

Next, I reviewed the federal statutes you referenced. Those statutes are either inapplicable to your situation or have been complied with fully. For instance, 15 U.S.C. § 1681 governs the furnishing of consumer reports by credit reporting agencies. The term 'credit reporting agency' refers to the credit bureaus, such as TransUnion, Experian, and Equifax. Because Credit Acceptance is not a "credit reporting agency" as defined in the Fair Credit Reporting Act, these statutes do not apply. Further, you signed the enclosed Retail Installment Contract to finance the purchase of a vehicle. Thus, your references to the Fair Credit Billing Act and 15 U.S.C. §§ 1637, 1666 do not apply because your account is not an open-end credit transaction (such as a credit card).

In sum, my investigation shows that you voluntarily entered into a valid contract and you are obligated to make the payments stated therein. Further, Credit Acceptance complied with all applicable laws while servicing your account, which includes accurately reporting your account status to credit bureaus and reasonably investigating your disputes. We therefore cannot provide the relief you request. It is our sincere hope that we have addressed your concerns. Should you have any additional concerns, please feel free to call Julia directly at (855) 862-5100.

Respectfully Yours,

*Jonathan L. Caulder*

Jonathan L. Caulder
Legal Counsel
Compliance Department

Enclosures

25505 West Twelve Mile Road
Southfield, Michigan 48034
(855) 862-5100 Phone



# CONFIDENTIAL



CLAIMANT'S
EXHIBIT
P. ___ P.3

BRANDEN TRAPP

Statement Date: 12/05/2024

**Account number:** 112059104

| Initial Balance as of 11/10/2023: | Remaining Balance as of 12/05/2024: | Past Due Amount as of 12/05/2024: |
|---|---|---|
| $ 16,631.60 | $ 17,585.83 | $ 2,758.56 |

## Transaction History

| Date | Description | Amount | Balance | Past Due* |
|---|---|---|---|---|
| 11/20/2024 | LATE FEE | 20.87 | 17,585.83 | 2,758.56 |
| 10/30/2024 | DIRECT PAYMENT | -450.00 | 17,564.96 | 2,320.29 |
| 10/30/2024 | INTEREST CHARGE | 270.59 | | |
| 10/20/2024 | LATE FEE | 20.87 | 17,744.37 | 2,770.29 |
| 09/30/2024 | DIRECT PAYMENT | -450.00 | 17,723.50 | 2,332.02 |
| 09/30/2024 | INTEREST CHARGE | 324.71 | | |
| 09/20/2024 | LATE FEE | 20.87 | 17,848.79 | 2,782.02 |
| 08/25/2024 | DIRECT PAYMENT | -90.00 | 17,827.92 | 2,343.75 |
| 08/25/2024 | INTEREST CHARGE | 18.03 | | |
| 08/23/2024 | DIRECT PAYMENT | -417.40 | 17,899.89 | 2,433.75 |
| 08/23/2024 | INTEREST CHARGE | 324.71 | | |
| 07/25/2024 | REPOSSESSION COST | 150.00 | 17,992.58 | 2,433.75 |
| 07/25/2024 | REPOSSESSION COST | 300.00 | 17,842.58 | 2,283.75 |
| 07/25/2024 | REVERSAL - REPOSSESSION COST | -300.00 | | |
| 07/18/2024 | REPOSSESSION COST | 300.00 | 17,842.58 | 2,283.75 |
| 07/18/2024 | DIRECT PAYMENT | -750.00 | 17,542.58 | 1,983.75 |
| 07/18/2024 | INTEREST CHARGE | 1,037.26 | | |
| 06/20/2024 | LATE FEE | 20.87 | 17,255.32 | 2,316.35 |
| 05/20/2024 | LATE FEE | 20.87 | 17,234.45 | 1,878.08 |
| 03/28/2024 | REPOSSESSION COST | 150.00 | 17,213.58 | 1,022.41 |
| 03/28/2024 | REVERSAL - REPOSSESSION COST | -150.00 | | |
| 03/28/2024 | REPOSSESSION COST | 300.00 | 17,213.58 | 1,022.41 |
| 03/28/2024 | REVERSAL - REPOSSESSION COST | -300.00 | | |
| 03/25/2024 | REPOSSESSION COST | 150.00 | 17,213.58 | 1,022.41 |
| 03/25/2024 | REPOSSESSION COST | 300.00 | 17,063.58 | 872.41 |
| 03/25/2024 | DIRECT PAYMENT | -742.40 | 16,763.58 | 572.41 |
| 03/25/2024 | INTEREST CHARGE | 974.13 | | |
| 03/20/2024 | LATE FEE | 20.87 | 16,531.85 | 1,314.81 |
| 02/20/2024 | LATE FEE | 20.87 | 16,510.98 | 876.54 |
| 01/20/2024 | LATE FEE | 20.87 | 16,490.11 | 438.27 |
| 12/08/2023 | DIRECT PAYMENT | -417.40 | 16,469.24 | 0.00 |
| 12/08/2023 | INTEREST CHARGE | 255.04 | | |

**\*Past due balances shown in transaction history are the past due balances as of the date each transaction posted to the account.**

**If your account is involved in a Chapter 13 bankruptcy, this Transaction History may not be the same as that under your Chapter 13 plan, which is administered by your Chapter 13 trustee. You should contact your trustee for your plan balance and any payments made under the plan.**

# EXHIBIT Q

PO Box 5070
Southfield MI 48086-5070
ADDRESS SERVICE REQUESTED

**credit acceptance**

Silver Triangle Building
25505 West Twelve Mile Rd.
Southfield, Michigan 48034-8339

**(877) 294-7732**

112059104-8782
Branden Trapp
10870 Marne St
Detroit MI 48224-4129

**DATE:** March 12, 2024



**ACCOUNT:** 112059104

**CONFIDENTIAL**

RE: Credit Reporting Dispute Determination

Dear Customer:

Credit Acceptance is in receipt of your credit reporting dispute.  Based on our investigation, we have concluded that the information provided by Credit Acceptance to the credit reporting agencies is complete and accurate and does not require modification, deletion, or other correction.

Regards,

Credit Acceptance Corporation
Credit Reporting Team

BONCRAC018782-47085430

# EXHIBIT R

 Feedback
provided



CONFIDENTIAL

**STATUS**

Feedback
provided on
12/5/2024

## Your feedback

**THE COMPANY'S RESPONSE ADDRESSED ALL OF MY ISSUES**

No

**I UNDERSTAND THE COMPANY'S RESPONSE TO MY COMPLAINT**

No

**THE COMPANY DID WHAT THEY SAID THEY WOULD DO WITH MY COMPLAINT**

No

**ADDITIONAL COMMENTS**

CAC's response failed to adequately address the issues I raised in my complaint. Specifically: 1. CAC did not provide any evidence to support their claim that they conducted a reasonable investigation into my dispute. They merely stated that they had done so, without providing any documentation or details. 2. CAC failed to explain why they reported inaccurate information to the credit bureaus, including late payments that were not actually late. They also did not provide any evidence to support their claim that the information reported was accurate. 3. CAC did not address my concerns about their failure to mark my dispute as "disputed" on my credit report. This is a clear violation of the Fair Credit Reporting Act (FCRA). 4. CAC's response included a copy of my Retail Installment Contract, but they did not explain how this contract supports their decision to report late payments. 5. CAC misinterpreted the relevant statutes, including 15 U.S.C. § 1681, which governs the furnishing of consumer reports. They claimed that this statute only applies to credit reporting agencies, when in fact it also applies to furnishers like CAC, specifically under 15 USC 1681s-2(b). In light of these failures, I request that the CFPB take further action to ensure that CAC complies with the FCRA and other applicable laws. I would appreciate it if the CFPB could investigate CAC's practices and take enforcement action if necessary. I am emailing Julia right now offering 5 additional days to settle this matter and send the requested documents. Thank you CFPB, all responses will be used in litigation.

# EXHIBIT S



From: **Branden Trapp** branden.trapp@gmail.com
Subject: **CAC CFPB RESPONSE! Provide additional information**
Date: **Dec 5, 2024 at 6:42:16 PM**
To: **Julia Clark** jclark@creditacceptance.com

Hey Julia

**CONFIDENTIAL**

Herein "CAC" means Credit Acceptance Corporation.

I am writing to follow up on my ongoing dispute regarding the inaccurate information reported on my credit report. As you are aware, I filed a complaint with the Consumer Financial Protection Bureau (CFPB), and your company responded to the complaint.

However, I remain unsatisfied with CAC's response and the lack of resolution to this matter. Therefore, I am providing CAC with a final opportunity to settle this dispute amicably.

I demand that CAC take the following steps within the next 5 business days from receiving this email:

1. Furnish documentation proving that CAC conducted a reasonable investigation into my dispute, including any evidence used to verify the accuracy of the information reported on my credit report.

2. Provide a detailed explanation of CAC's policies and procedures for handling consumer disputes and investigating the accuracy of credit report information.

To facilitate a thorough review of CAC's response to the CFPB, I also request that you provide me with the following documentation:

1. A copy of the complete investigation file related to my dispute, including all documents, notes, and communications.
2. Evidence of the date and method by which CAC notified the credit reporting agencies of the dispute.
3. Documentation showing the date and method by which CAC reported the corrected information to the credit reporting agencies.
4. A copy of CAC company's policies and procedures for reporting credit information to the credit reporting agencies.

If I do not receive a satisfactory response from you on behalf of CAC or CAC within the next 5 business days, I will pursue arbitration to resolve this matter. I am confident that a neutral third-party arbitrator will find in my favor.

# CONFIDENTIAL



Please confirm that you have received this email.

This message will also be sent in writing directly to CAC by USPS PRIORITY EXPRESS MAIL (overnight shipping) the tracking number is EL 805074523 US.

CAC FAILURE TO PROVIDE ALL THE REQUESTED DOCUMENTATION WILL PUT CAC IN DEFAULT.

You can send the requested documents to this email.

Best regards

Branden Trapp

# EXHIBIT T



CONFIDENTIAL



12/6/24, 1:05 PM

Enter My Time - Workday

https://wd5.myworkday.com/quickenloans/d/task/2998\$10895.htmld

☰ MENU

workday.

🔍 Search

**Enter My Time**   Branden Trapp ⋯

CONFIDENTIAL

1 Alert

⋯   ılıı   [PDF]



**Need to submit your timecard?**
First ensure that the time showing on your timecard is correct. Once you've done that, then **scroll to the bottom of the page and click the 'Review' button.**

**Is your timecard incorrect?**
**Reach out to your team leader** to let them know what needs to be corrected.

**Meal Break Reminder!**
**The expectation is that all non-exempt team members clock in/out of work, including during meals.** Taking breaks to stretch your legs and grab lunch are good for keeping an effective mindset throughout the day, but you must remember to clock out and then back in when you resume your workday. If you need to adjust your timecard, contact your leader.

**Timekeeping Guide Posts!**
Click **HERE** for any questions you have!

<

> 

**Friday, December 6, 2024** ∨

| Mon | Tue | Wed | Thu | Fri | Sat | Sun |
|-----|-----|-----|-----|-----|-----|-----|
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |

Hours: 8.150834



PTO Unplanned
2 Hours

( Review )

∨

1/3

12/8/24, 1:05 PM

Enter My Time - Workday

⊙ Not Submitted

**CONFIDENTIAL**

7 AM

8 AM | **Regular**
7:50am - 11:02am
3.202778 Hours
⊙ Not Submitted

9 AM

10 AM

11 AM | **Regular**

12 PM

1 PM | **Regular**
1:00pm - 2:17pm
1.271667 Hours

2 PM

3 PM

4 PM

5 PM

6 PM

Review

1 Alert

CLAIMANT'S EXHIBIT
T.
R.2

CONFIDENTIAL *- Medical*

CLAIMANT'S
EXHIBIT
I.  P4



**BuzzRx.**

BIN: **018612**   PCN: **HELP**   GRP: **CARE111**

— Ashwagandha
     for stress
— Excedrin   for
     headache



♥**CVS** pharmacy®

33 WEST NINE MILE RD
HAZEL PARK, MI  48030
248.541.1650

REG#14 TRN#4884 CSHR#0521639 STR#8103

Helped by: KEISHA

**ExtraCare Card #: ********9550**

    1 NM ASHWGHDH        6OCT  23.49N

F 1 EXCDRN MGRNE CPLTS 24CT   7.49T

    2 ITEMS
        SUBTOTAL           30.98
        MI 6.0% TAX          .45
        TOTAL              31.43
        CHARGE             31.43
        ************8893      CH
VISA CREDIT    ************8893
APPROVED# 623361        REF# 148845
TRAN TYPE: SALE         AID: A0000000031010
TC: CE3DB72B45ED7E39    TERMINAL#
NO SIGNATURE REQUIRED   CVM: 5E0000
TVR(95): 8080008000     TSI(9B): 6800

    CHANGE                   .00



3508 1034 3414 8841 45
Returns with receipt, subject to
CVS Return Policy, thru 02/04/2025
Refund amount is based on price
after all coupons and discounts.

DECEMBER  6, 2024         12:18 PM

     

Schedule your flu and COVID-19 vaccines.
the rush and book your vaccine today